MCARTHUR *v.* CITY OF CHEBOYGAN.

1. SPECIFIC PERFORMANCE—CONTRACTS—LACHES.

   On the 20th of November, complainants made a proposition to defendant to sell certain lots for park purposes, which by resolution of the common council was accepted on the same date. No time for the performance of the contract was specified, and on the 15th of January following the council attempted to rescind the contract. Complainants on March 5th tendered a deed and abstract of title, and on the refusal of the city to accept and pay, filed a bill for specific performance. *Held,* that complainants were not barred by laches; since the law, the time not being specified, implies a performance within a reasonable time, and, after the attempted rescission, they were only obliged to make a tender as a prerequisite to filing the bill.

2. MUNICIPAL CORPORATIONS—BONDS—PURPOSE OF ISSUANCE—DI-VERSION. ·

   Where a city, prior to the time of accepting an offer for the sale of certain lots for park purposes, had raised by the sale of bonds, duly authorized, a sum largely in excess of the amount expended for such purposes, it could not defend a bill for specific performance on the ground that there were no funds available; since, in the contemplation of law, such money was in the fund for which it was authorized.

Appeal from Cheboygan; Shepherd, J.   Submitted January 19, 1909.   (Docket No. 28.)   Decided March 30, 1909.

Bill by Clark J. McArthur and others against the city of Cheboygan for the specific performance of a land contract.   From a decree for complainants, defendant appeals.   Affirmed.

*Frost & Sprague,* for complainants.

*C. S. Reilley,* for defendant.

The bill of complaint in this case is filed to compel spe-

cific performance of a contract by which the defendant agreed to purchase certain real estate from the complainants, known as the "Horne property," located on Main street, in the city of Cheboygan.   The contract of purchase was entered into in the following manner :   About 75 citizens, among the heaviest taxpayers, petitioned the city council to purchase said property for a public park, which petition was received, and the mayor appointed a committee of three with the city attorney to investigate the matter of making said purchase.   November 12, 1906, the special committee reported to the council that the purchase of the "Horne property" for a park was a necessary public improvement, and recommended such purchase be made.   November 20, 1906, the committee submitted to the council a written proposition from the owners of the property in question, complainants herein, for the sale of the property, as follows :

"To the Common Council of the City of Cheboygan.

"*Gentlemen:*   We herewith submit to you a proposition for the purchase by you of lots 29, 30, 31, 34 and 36, in the M. W. Horne's first and second addition to the village (now city) of Cheboygan for the consideration of $8,000, $500 to be paid down and the balance on or before two years.   The city to issue its orders for the same.   Interest on deferred payments at the rate of 6 per cent. per annum payable annually.

"We will furnish abstract and give you perfect title to said property.

"Respectfully submitted,<br>
"H. MCARTHUR,<br>
"MRS. W. S. MCARTHUR,<br>
"O. M. CLARK,

"By C. J. MCARTHUR, duly authorized.

"C. J. MCARTHUR.

"Dated November 20, 1906."

At the same meeting of the city council the foregoing proposition of complainants was accepted by the defendant, as follows :

"By Alderman Dargan :

"Whereas, it appears that this council has made an in-

vestigation of the purchase of certain property hereinafter described for park purposes and that the purchase of the same would be a public improvement and also it appearing that the purchase of said property will induce the building of a very large hotel and that it is almost unanimous the request of the heaviest taxpayers in Cheboygan that such purchase be made:

"Be it resolved, that the city of Cheboygan purchase from the owners the following described land, to wit: Lots 29, 30, 31, 34, and 36, in M. W. Horne's first and second addition to the village (now city) of Cheboygan, in said city of Cheboygan, Michigan.

"Be it further resolved, that the proposition submitted to the council from the property owners that they will sell to the city the above-described property and for the consideration of the sum of $8,000, $500 to be paid on the execution of the papers, the balance to be paid on or before two years from the date thereof at 6 per cent. per annum, interest payable annually, be and the same is hereby accepted, and

"Be it further resolved, that the city clerk and mayor are hereby authorized and directed to complete said purchase in behalf of said city according to the terms hereinbefore mentioned and that upon the proper execution of said papers the city clerk is hereby authorized to draw orders in favor of the owners one of $500 payable on presentation, one for $3,750 payable on or before one year from date, interest at 6 per cent. and the other for $3,750 payable on or before two years from date interest at 6 per cent. per annum, interest payable annually.

"Be it further resolved, that said property as above described and mentioned shall be used exclusively for park purposes.

"Adopted by the following vote:

"Yeas—Aldermen Lundberg, Ash, Gilpin, Dargan, Wheelock, Brackett, Tuttle.

"Nays—None.

"Nov. 20."

On January 15, 1907, the council took the following action:

"Whereas, it appears that the council at its meeting held November 20, 1906, passed a resolution for the purchase of certain property hereinafter described for park purposes; and whereas, it appears that the purchase of

said property was for the purpose of inducing the building of a new hotel and it appearing that said hotel is not to be built: Be it resolved, that the resolution passed by the council at its meeting held Tuesday evening, November 20, 1906, for the purchase of certain real estate described as lots 29, 30, 31, 34 and 36, in M. W. Horne's first and second addition to the village (now city) of Cheboygan in said county of Cheboygan, Mich., for the sum of $8,000 to be paid as mentioned in said resolution and authorizing the city clerk and mayor to complete said purchase, be and the same is hereby rescinded.

"Adopted by the following vote:

"Yeas—Ash, Lyons, Gilpin, Dargan, Kessler, Ruggs, Tuttle—7.

"Nays—None."

On March 5, 1907, complainants tendered to the defendant a deed conveying the property in question to the defendant, together with an abstract of title. The mayor and city clerk refused the same upon the ground that the council had rescinded its action in making said purchase. Some time prior to the making of the contract in question the city of Cheboygan had, under proper authority, issued bonds to the amount of $25,000 "for the purpose of making public improvements in and purchasing land for park purposes for the city of Cheboygan." At the time the contract was made this fund had been depleted as follows: On March 2, 1904, $11,173.69 was transferred to the water fund, and on April 29, 1904, $12,151.25 was transferred to the general fund. A small park was purchased and improved at a cost of about $1,000 prior to the foregoing transfers.

Specific performance was decreed by the court below, from which decree defendant appeals.

Brooke, J. (*after stating the facts*). The defendant urges two grounds of reversal: *First*, that the complainants are not entitled to a decree by reason of their laches; *second*, that the contract is void by reason of the fact that the municipality, at the time it entered into the same, had no funds with which to discharge the debt created there-

by.   It is apparent that the defendant city was anxious to secure the building of a hotel which would tend to induce tourist trade which is common to the northerly cities of the State.   A proposal was received by the city to the effect that such an hotel would be built if the land in question in this suit were purchased for a public park.   The city thereupon entered into this contract in question.   Between November 20, 1906, and January 15, 1907, the hotel proposition, which was the inducing cause for the purchase of the land, was abandoned, and thereupon the common council attempted to rescind its action of November 20th.   During this time, nearly two months, the complainants had, so far as the record shows, taken no steps to carry out their part of the contract.   They had tendered neither deed nor abstract to the defendant, and the record discloses no reason for their failure to do so.   They became aware, through the public press, of the attempted rescission by the council at or about its date, but not until March 5th did they undertake to perform their part of the contract they now seek to enforce.   In the meantime the hotel project which constituted the principal, if not the sole, inducing cause for the purchase, had been abandoned.   It is urged on the part of the defendant that it is inequitable, under these circumstances, to compel specific performance.   We are unable to agree with the contention of defendant as to laches.   It will be noted that the contract, enforcement of which is sought, is silent as to the time of performance.   The law would, therefore, imply that the performance was intended by the parties within a reasonable time.   We are asked to say that delay on the part of the complainants from November 20th to January 15th is an unreasonable delay.   We cannot so hold, particularly in view of the fact that the record fails to show that the delay of the complainants in tendering performance in any way influenced the failure of the hotel project.   Of course, the attempted rescission by the council on January 15, 1907, relieved complainants from the necessity of hurried action thereafter.   The council by

that action notified complainants that defendant would not perform the contract on its part, and they were not obliged to make tender except as a prerequisite to their suit for specific performance.

The second ground for reversal urged by defendant is equally untenable.   The city of Cheboygan had raised by the sale of bonds, duly authorized, the sum of $25,000, "for the purpose of making public improvements in and purchasing land for park purposes for the city of Cheboygan."   Less than $1,000 of this fund was expended in the purchase and improvement of land for park purposes. It is unnecessary to determine whether the $11,173.69 transferred from this fund to the water fund on March 2, 1904, was or was not a legal transfer.   Conceding its legality, upwards of $12,000 remained in the fund which was afterwards transferred to the general fund, and which was more than sufficient to cover the price of the land purchased.   This last transfer was clearly an attempted diversion of the fund in part from the proper and intended use.   In contemplation of law, therefore, the money for this purpose is still in the fund, and the council must return to it so much as is necessary to carry out the contract under discussion.   See *Mitchell* v. *City of Negaunee*, 113 Mich. 360 (38 L. R. A. 157).   It is perhaps unfortunate that the defendant city be obliged to purchase this park at a time when the inducement which moved it to action has ceased to exist.   It, however, acted through its proper officers with deliberation and certainty, and we see no good reason upon this record why it should be permitted to escape the consequences of its action.

Decree affirmed.

Grant, Montgomery, Moore, and McAlvay, JJ., concurred.