## SCOVEL *v.* CITY OF DETROIT.

1. EVIDENCE—DEEDS—SPECIAL ASSESSMENTS — PAROL EVIDENCE—CONSIDERATION—MUNICIPAL CORPORATIONS.

Testimony tending to show that property was deeded to a municipal corporation for a boulevard, under an agreement with the members of the municipal boulevard commission that special assessments were not to be made for improvements, is competent to show the true consideration.

2. MUNICIPAL CORPORATIONS—TAXATION—SPECIAL ASSESSMENTS—SIDEWALK IMPROVEMENTS.

The conveyance to the city of Detroit of property for a boulevard, by a deed referring to Act No. 388, Local Acts 1889, creates an implied contract to raise funds for improvements by general taxation as provided in the act, and is not affected by its repeal under a proviso that rights acquired under the repealed law should not be impaired.

Appeal from Wayne; Mandell, J. Submitted October 14, 1909. (Docket No. 35.) Decided December 10, 1909.

Bill by Massie W. Scovel and another against the city of Detroit and others to restrain a special assessment for

the construction of sidewalks. From a decree dismissing the bill complainants appeal. Reversed, and decree entered for complainants.

*James H. McDonald* and *Lloyd L. Axford*, for complainants.

*Walter Barlow* (*P. J. M. Hally*, of counsel), for defendants.

BLAIR, C. J. On January 28, 1887, Daniel J. Scovel and Jane M. Scovel, his wife, conveyed by warranty deeds two strips of land, one strip by each deed, to the city of Detroit for the use of a public boulevard, as contemplated by Act No. 374 of the Local Acts of 1879. The following reservation by the grantors is contained in each deed:

"Said strip of land is conveyed only for the use of a public boulevard as contemplated by Act No. 374, passed by the legislature of Michigan in 1879, and if discontinued by law, shall revert to the parties of the first part, their heirs and assigns, and they may enter upon and possess the same, together with all and singular the hereditaments and appurtenances thereunto belonging or in any wise appertaining."

The complainants are heirs at law and assignees of said Daniel W. Scovel and Jane M. Scovel, his wife, and are the owners in fee simple of several lots abutting the strips of land so conveyed by said Daniel J. Scovel and Jane M. Scovel, his wife, to said city for boulevard purposes. The commissioner of parks and boulevards caused notice to be served upon them to build, at their own expense, a cement sidewalk upon a part of said boulevard, in front of their several lots, and they refused to build said sidewalk, claiming that the same was an improvement on said boulevard and should be paid for by public taxation. On their refusal to construct said sidewalk, the said commissioner of parks and boulevards constructed the same. The cost and expense thereof, $326.31, has been assessed upon their said lots; and the city treasurer is threatening to sell

said lots for nonpayment of said special assessments thereon.    The bill was filed to set aside said special assessments, and to restrain the city treasurer from selling said lots for the purpose of collecting said assessments.    On the hearing of the case in the court below a decree was entered dismissing the bill, and the complainants have appealed therefrom to this court.

The commissioner constructed the sidewalk under the authority of Detroit City Charter (1904), § 571.    Counsel for complainants contend that the acceptance of the deeds, specifically referring to the statute, which prohibited special assessments of abutting property for improving the boulevard, created a contract that, in consideration of such deeds, grantors should not be subjected to such assessments.    This contention is denied by counsel for defendants, who insist that the question has been disposed of in their favor in the case of *Turner* v. *City of Detroit*, 104 Mich. 326 (62 N. W. 405).    James D. Scovel, a son of Daniel J. Scovel, testified, under objection, that he was one of the witnesses to the deeds, and that at the time they were executed he was familiar with the proceedings for the establishment of the boulevard; that he acted for his father in that matter, and personally delivered the deeds; that the talk then was that it was considered there would be no assessments of abutting property; that the abutting property would stand no part of the cost of construction, and under those conditions the deeds were given; that his father expected to derive a benefit to his property on account of the nature of that thoroughfare, and that that was the chief feature that led him to do as he did do; that it would enhance the value of his property along the boulevard frontage; that he talked with Mr. Chapoton, Mr. McGrath, and Mr. Langley, who were the members of the board of public works, and also boulevard commissioners at that time, in regard to making the dedication to the city for boulevard purposes; that he informed his father and mother of the substance of his un-

159 MICH.—7.

derstanding with these gentlemen, and that after the matter was all understood by Mr. Chapoton, Mr. Mc-Grath, Mr. Langley, and his father and mother and himself, the two deeds were executed by his father and mother in the form that they show here. We think the testimony was competent, as showing the actual consideration of the deed. *Long* v. *Mayor, etc., of Battle Creek,* 39 Mich. 323 (33 Am. Rep. 384); *Strohauer* v. *Voltz,* 42 Mich. 444 (4 N. W. 161); *Breitenwischer* v. *Clough,* 111 Mich. 6, 116 Mich. 340 (69 N. W. 88, 66 Am. St. Rep. 372, 74 N. W. 507); *Ford* v. *Savage,* 111 Mich. 144 (69 N. W. 240); *Eckler* v. *Alden,* 125 Mich. 215 (84 N. W. 141). *Turner* v. *City of Detroit, supra,* does not rule this case. It appears from the opinion in that case that the complainant alleged in her bill:

"That her land was condemned for the use of the boulevard in 1890, under Act No. 388, Local Acts 1889. Her counsel in their brief refer to the original boulevard act (No. 374, Local Acts 1879). This act was expressly repealed by the act of 1889. Complainant's rights must therefore be determined by the later act."

Section 16 of said Act No. 374 is as follows:

"Sec. 16. The city of Detroit may annually raise and appropriate funds for the uses and purposes of the said boulevard, but shall raise the same by taxation only, and after approval of the board of estimates, and in the manner provided by law for raising funds for the general purposes of the said city. The funds raised by the city of Detroit for the uses and purposes of the said boulevard shall remain with the city treasurer of the said city, and shall be kept by him in a separate fund, to be known and designated as the 'boulevard fund,' and no moneys shall be drawn therefrom except on the warrant of the controller of said city."

Section 17 makes a similar provision with reference to the townships of Hamtramck, Greenfield, and Springwells. The limitation of the raising of funds, "for the uses and purposes of the boulevards," "by taxation *only,* and after approval of the board of estimates, and in the

manner provided by law for raising funds for the general purposes of said city," does not appear in said Act No. 388. The language of the deeds that "said strip of land is conveyed for the use of *a public boulevard as contemplated by Act No. 374,*" etc., should be construed, in the light of the surrounding circumstances, as referring to a boulevard to be improved and maintained by general taxation only. Under this construction the acceptance of the deeds by the city raised an implied contract, at least, not to levy special assessments upon the grantor's abutting property. The agreement was one which the city had power to make, and which it ought to keep. *Coit* v. *City of Grand Rapids,* 115 Mich. 493 (73 N. W. 811). The section (30) of Act No. 388, Local Acts 1889, which repealed Act No. 374, Local Acts 1879, expressly "Provided, that such repeal shall not impair or affect any acts done or rights accrued or acquired under said act."

The decree is reversed, and a decree may be entered in accordance with this opinion, with costs of both courts to complainants.

GRANT, MOORE, McALVAY, and BROOKE, JJ., concurred.