MacLACHLAN v. CITY OF DETROIT.

1. EVIDENCE—DEEDS—STREETS—DEDICATION OF PLAT — MUNICIPAL CORPORATIONS.

Testimony by one of the stockholders of a corporation owning a plat that, in dedicating the same to the city, a boulevard shown therein was offered as a boulevard and not as an ordinary street, and that the same was accepted as such, *held*, admissible.

2. MUNICIPAL CORPORATIONS — STREETS—BOULEVARDS—TAXATION— SPECIAL ASSESSMENTS—PAVING TAX.

Where a plat in the city of Detroit containing a street of extra width was dedicated and accepted with the understanding that the same should be a boulevard and that funds for its improvement should be raised by general tax as provided in the charter of said city for improving parks and boulevards, the action of the city council in afterwards placing said boulevard under the control of the street committee and assessing a special tax for paving against abutting owners, *held*, illegal and void.

3. SAME—ESTOPPEL.

The status of plaintiff, a purchaser of a lot abutting said boulevard, in a suit to enjoin the collection of said illegal tax, could not be affected by the fact that one of the aldermen who voted for the paving was one of the stockholders in the corporation owning said plat.

BROOKE and KUHN, JJ., dissenting.

Appeal from Wayne; Chester (Guy M.), J., presiding. Submitted January 23, 1919. (Docket No. 96.) Decided December 22, 1919.

Bill by Annie E. MacLachlan against the city of Detroit and another to enjoin the collection of a paving tax. From a decree for plaintiff, defendants appeal. Affirmed.

*Arthur Schueler,* for plaintiff.

*Walter Barlow* (*Allan H. Frazer,* of counsel), for defendants.

Moore, J.    This is a bill filed to enjoin defendants from collecting a tax spread upon the lands of plaintiff for the paving of a street in front of her premises.    While the amount involved in this case is $168, it is agreed by counsel that it is a test case involving about $60,000.    From a decree in favor of the plaintiff the case is brought here by appeal.

After the hearing, the trial judge filed an opinion which reads:

"The Marshland Boulevard Land Company was interested in the lands platted, a portion of which are involved in this suit, and presented to the common council of the city of Detroit a proposed plat; that the plat showed various streets paralleling and crossing each other, with names which referred to them as streets.    This plat also showed a street wider than the other (being 70 feet), which was given the name, 'Marshland boulevard.'    Later a strip ten feet wide was added, making the boulevard 80 feet wide.

"The common council accepted and approved the plats, and the same were recorded in the office of the register of deeds.    By resolution the common council changed the name 'Marshland boulevard' to 'Lakewood boulevard.'

"On February 17th, 1914, the common council, by resolution, placed Lakewood boulevard under the control of the department of parks and boulevards, and made it a part of the park and boulevard system, and directed the commissioner to take possession of and maintain the same as a part of the park and boulevard system of the city of Detroit.

"On March 2, 1914, plaintiff purchased the lot in question on Lakewood boulevard.    On April 18, 1916, the common council of the city of Detroit passed the two following resolutions:

" 'Resolved, that the report of the committee on parks and boulevards, and the accompanying resolution of Alderman Jakel

adopted on February 17th, 1914, placing the street or highway known as Lakewood boulevard, and extending southerly from Jefferson avenue, between Coffin and Chalmers avenues, under the control of the department of parks and boulevards and making the same a part of the park and boulevard system, and authorizing and directing the commissioners of parks and boulevards to take possession of and maintain the same as a part of the park and boulevard system of the city of Detroit, be and the same is hereby rescinded.

" 'Resolved, that the department of public works be and is hereby requested to consider the advisability of paving Lakewood boulevard, from Jefferson avenue to Essex avenue, with cedar on concrete foundation, under the six hundred thousand dollar clause of the charter.'

"This action was taken without any notice to the platters of this property and without any notice to the abutting owners on Lakewood boulevard that this boulevard was to be transferred from the park system to the street committee.

"Following this proceeding, Lakewood boulevard was paved, and the cost assessed to the abutting property owners.

"The language used in the two deeds of dedication is substantially the same. Naming the grantor, the following is the language used:

" 'Has caused the land embraced in the annexed plat to be surveyed, laid out and platted  *  *  *  and that the streets and alleys shown on said plats are hereby dedicated to the use of the public.'

"The term 'boulevard' means more than the term 'street.' A boulevard is a public street usually wider than the ordinary street, and is given a park-like appearance by being beautified with trees, flowers and the like, and is not used for heavy teaming.

"That grantors intended Marshland boulevard, so-named, as a boulevard, is apparent from the plat, because of its name and its being wider than all other public highways named on the plat.

"It is also apparent that the city of Detroit, in accepting and approving the plat, understood and accepted Marshland boulevard, so named, as a boulevard. The city changed its name to Lakewood boulevard, and placed it under the control of the department of parks

and boulevards, and made it a part of the boulevard system and directed the commissioner to take possession and maintain the same as a part of the park and boulevard system of the city of Detroit.

"This being the understanding of both parties, as shown by the plats which are a part of the grants, and the proceedings of the city of Detroit, as shown by the proceedings of the common council, then it should be construed as creating a boulevard which is to be improved and maintained under the provisions of the charter of the city of Detroit with reference to parks and boulevards.

"Plaintiff having purchased property abutting on Lakewood boulevard while the same was a part of the park and boulevard system of the city of Detroit, her rights therein and her status with reference thereto cannot be changed without notice to her of the proposed change and she being given an opportunity to be heard. She was not given this opportunity.

"The city of Detroit having accepted Lakewood boulevard and having made it a part of its park and boulevard system, and while it was a part of such system, plaintiff having acquired property abutting thereon, then the city should be bound by the charter provisions with reference to boulevards until the same has been abandoned as such by legal proceedings for that purpose.

"The grounds under the control of the park and boulevard commissioner shall be used and enjoyed solely for the purposes for which they were established. Charter of Detroit [1904], § 554.

"Boulevards cannot be used the same as ordinary streets. Certain restrictions are made applicable to boulevards which do not apply to ordinary public streets, and these restrictions apply to Lakewood boulevard. See Charter of Detroit [1904]; §§ 572, 573, 574, 575, 576, 578, 582, 583, 585 and 590.

" 'Sec. 546. The commissioner of parks and boulevards shall have the control and management, and shall have charge of the improvements of all the parks and public grounds of said city, including the island park, known as Belle Isle park, and of such parks and public grounds as may hereafter be acquired, laid out, purchased or dedicated for public use in said city. And he shall likewise have the control, management, and charge

of the improvement and maintenance of the boulevard, which was laid out and established by the act creating said board of boulevard commissioners, and of any other boulevard which may at any time be hereafter acquired, laid out, established or located by said city. The authority hereby conferred shall not be construed as giving any charge or control to said commissioner over and to the improvement of any of the ordinary public streets or alleys.' * * *

" 'SEC. 548. The commissioner shall, annually, before the first day of April, prepare and submit to the common council an estimate of the amount of money that should be raised for the ensuing fiscal year for the purpose of improving and maintaining the grounds under his charge, which estimate shall specify the sums desired for each of the several objects of expenditure, and at the same time make a report to the common council of the amount of revenue and income which it is estimated shall be received during such fiscal year from any source. * * *

" 'SEC. 549. The common council of said city with the consent of the board of estimates, may cause to be placed upon the general tax roll, and raised by tax the same as other taxes, such sum as they may think proper to be raised for each of the several objects of expenditure, estimated as aforesaid, the maintenance and improvement of said parks, public grounds and boulevards, or for the payment of any other expenses which said commissioner is, by this act, authorized to incur.' * * *

"Under the foregoing circumstances, and considering these provisions of the city charter and the case of *Scovel* v. *City of Detroit*, 159 Mich. 95, I think it follows that this special assessment is not authorized in the law, and is void.

"A decree may be entered in accordance with these findings."

Only one witness, Mr. Freud, was sworn. He testified in substance that before filing the plat he appeared before the committee of the council and explained to them that his company was offering the boulevard as a boulevard and not as an ordinary public street.

"I suggested to the committee that if they would accept this as a boulevard we would make the street wider and plan it as a boulevard—we might have

planned it in several other ways more advantageously and more profitably to our company, by making the street fifty feet wide, or sixty, and adding the property, the difference, to the surrounding lots—in fact, we might have saved a good deal more property because it was only necessary for us to give one-half of the street—either twenty-five or thirty feet, and the people west of us would be compelled to give the other twenty-five or thirty feet.

"*Q.* You did not own the property west of it?

"*A.* We did not—so I pointed this out to the committee and offered it to them as a boulevard, and they accepted it as such, and our plat was recorded. We made the street, at that time, seventy feet wide. It was then known as Marshland boulevard and subsequent to that time the Marshland Boulevard Land Company purchased the property west of this boulevard. * * * On August 11, 1913, we filed a petition with the common council of the city of Detroit for the acceptance of a proposed plat west of this boulevard. * * *

"*Q.* At that time, Mr. Freud, what was said by you to the committee about the additional ten feet to the boulevard?

"*A.* I appeared before that committee and I suggested to them that inasmuch as this was a boulevard —very fine street, that we would be willing to give them an additional ten feet to make it a much better street—we might have added this on to the lots—made our lots a good deal more valuable. We offered it to the city and they accepted it and the street on our plat was marked distinctly Lakewood boulevard. * * *

"*Q.* Would you have offered that property to the city, either Marshland or Lakewood boulevard, had it been an ordinary street?

"*A.* I would not.

"*Q.* Did you offer it for the purpose of enhancing the value of that boulevard as a boulevard?

"*A.* Yes, and that is the only reason.

"*Q.* Was there an extended agitation in the city about this Riverside boulevard?

"*A.* Very much—there were several meetings held publicly — the city planned improvements and there

were very elaborate plans drawn for this Riverside boulevard. * * *

"*Q.* That was at the southerly end of your property?

"*A.* Southerly end of the property. * * *

"*Q.* Had you talked with the City Plan and Improvement Association?

"*A.* Yes. And the members of the council were satisfied with our offer; they were very much pleased with it."

It is now the claim of the city—we quote from the brief:

"The dedication of the public streets in the Marshland boulevard subdivision was made in the following language:

" 'Know all men by these presents: That the Grosse Pointe Land Company has caused the land embraced in the annexed plat to be surveyed, laid out and platted, to be known as "The Marshland boulevard sub. of part of private claim 321, Detroit, Wayne county, Michigan," and that the streets and alleys shown on said plat are hereby dedicated to the use of the public.'

"On the 19th day of April, 1910, the common council of the city of Detroit approved and accepted said plat. The language used by said common council in accepting and approving said plat, was as follows:

" 'Resolved, that the plat of Marshland boulevard subdivision, part of private claim 321, be and the same is hereby accepted and approved, and the commissioner of public works be and he is hereby directed to sign and approve the same.'

—and that the same language was used as to the second plat. * * *

"The resolution of the common council adopted February 17, 1914, placing Lakewood boulevard under the control of the department of parks and boulevards of the city, referred to it as a 'street or highway.'

"The resolution of the common council adopted April 18, 1916, rescinding the resolution of February 17, 1914, referred to Lakewood boulevard as a 'street or highway.' It was a boulevard in name only. Its name 'Lakewood boulevard' carries with it no more significance than the name of the street, 'Broadway'

in city of New York, or the name of the street 'Commonwealth avenue' in the city of Boston, or the names of streets, 'Boston boulevard,' 'Chicago boulevard,' 'Dexter boulevard,' 'Hamilton boulevard,' 'Lafayette boulevard,' 'Park boulevard,' 'Washington boulevard,' and others in the city of Detroit,"

—and that the city had the right to pave this street the same as any other street, citing among other authorities *Burridge* v. *City of Detroit,* 117 Mich. 557 (42 L. R. A. 684), and *Newberry* v. *City of Detroit,* 184 Mich. 188. These cases are both dissimilar from the instant case. The first was a personal injury case involving the liability of the city for a defective sidewalk, and in the last-named case there was no claim of exemption from taxes because the street paved was a boulevard.

The claim of the city involves the proposition that Mr. Freud's testimony was incompetent and the further proposition that nothing was accomplished by the council formally placing the street under the control of the department of parks and boulevards. We think the case is controlled by the principles stated in *Scovel* v. *City of Detroit,* 159 Mich. 95. See, also, *Conkling* v. *Village of Mackinaw City,* 120 Mich. 67; *White* v. *Smith,* 37 Mich. 291; *McArthur* v. *City of Cheboygan,* 156 Mich. 152; *Crosby* v. *City of Greenville,* 183 Mich. 452.

The counsel for the city urge that Mr. Burton, who was an alderman and also a stockholder in the company with Mr. Freud, and his brother voted to rescind the action of the council in putting the street under the control of the park and boulevard commission and also voted for the paving of the street. We do not see how this action on the part of Mr. Burton can affect the status of the plaintiff.

The decree is affirmed with costs to the plaintiff.

BIRD, C. J., and STEERE, FELLOWS, and STONE, JJ., concurred with MOORE, J.

BROOKE, J. (*dissenting*). The facts involved herein are sufficiently set forth in the opinion of my Brother MOORE. I desire only to emphasize the form of the dedication, which is as follows:

"Know all men by these presents: That the Grosse Pointe Land Company has caused the land embraced in the annexed plat to be surveyed, laid out and platted, to be known as 'The Marshland boulevard sub. of part of private claim 321, Detroit, Wayne county, Michigan,' and that the streets and alleys shown on said plat are hereby dedicated to the use of the public,"

—and the resolution of the common council accepting said plat in the following terms:

"Resolved, that the plat of Marshland boulevard subdivision, part of private claim 321, be and the same is hereby accepted and approved, and the commissioner of public works be and he is hereby directed to sign and approve the same."

Like language of acceptance and dedication was used as to the adjoining plat. I call attention to the language of dedication and acceptance for the purpose of emphasizing the fact that nothing is shown of record indicating that "Lakewood boulevard" was treated either by the owners of the property in dedicating, or by the city authorities in accepting the plat, in any manner which would distinguish it from an ordinary street. Although the claim is made in the brief of counsel for plaintiff that the mere calling of a street a boulevard has some bearing upon the question here involved, I am of the opinion that such claim is utterly without foundation. We have in the city of Detroit as pointed out by counsel for the defendant many so-called "boulevards" which are simply "streets"; among them the following: Boston, Chicago,

Dexter, Hamilton, Lafayette, Park, Washington, most of which remain under the jurisdiction of the board of public works. Nothing therefore can be predicated upon the mere use of the word "boulevard" instead of "street." Plaintiff's right, if any, in the premises must be based on the testimony of Mr. Freud, and upon the resolution of the common council of February 17, 1914.

The law relative to the admissibility of Mr. Freud's testimony is stated as follows:

"To show the intention of the alleged dedicator with reference to acts of dedication. either for or against the dedication, his declarations made at the time of the acts or so near that time as to be a part of the transaction are admissible in evidence as a part of the *res gestæ.* Such declarations will not be admissible, however, after the dedication has become irrevocable by acceptance." 13 Cyc. p. 472.

See cases cited in note 18. My conclusion is that Mr. Freud's testimony should have been excluded, and, so excluded, there remains only for consideration the legal effect of the resolution of February 17, 1914, placing "the street or highway known as Lakewood boulevard * * * under the control of the department of parks and boulevards." Two years later and on April 18, 1916, this resolution was rescinded. In the meantime no money had been appropriated by the city of Detroit for the paving of Lakewood boulevard at public expense.

Assuming but not determining that the common council of the city of Detroit has authority by mere resolution to change the character of a highway from that of an ordinary "street" to a "boulevard" and place it under the jurisdiction of the department of parks and boulevards, such action is simply an exercise of a legislative function which may in the discretion of the legislative body be changed or rescinded at any

later time. In other words the power to enact, in the absence of contractual relations, implies the power to rescind.

The case of *Scovel* v. *City of Detroit*, 159 Mich. 95, cited and relied upon by counsel for plaintiff, has no bearing upon the question here under consideration. In that case the court had under consideration the Grand boulevard encircling the city of Detroit, provided for by an act of the legislature in which there appears the following:

"The city of Detroit may annually raise and appropriate funds for the uses and purposes of the said boulevard, but shall raise the same by taxation only, and after approval of the board of estimates and in the manner provided by law for raising funds for the general purposes of the said city." Act No. 374, Local Acts 1879, § 16.

The conveyance from Scovel to the city contained the following language:

"Said strip of land is conveyed only for the use of a public boulevard as contemplated by Act No. 374, passed by the legislature of Michigan in 1879," etc.

In passing upon the question there involved this court said:

"The language of the deeds that 'said strip of land is conveyed only for the use of a public boulevard as contemplated by Act No. 374,' etc., should be construed, in the light of surrounding circumstances, as referring to a boulevard to be improved and maintained by general taxation only. Under this construction the acceptance of the deeds by the city raised an implied contract, at least, not to levy special assessments upon the grantor's abutting property."

It cannot be contended that the dedication and acceptance in the case at bar imports any contractual relations between the city and the owners by the terms of which the street known as Lakewood boulevard should be improved at public expense. I am of the

opinion that plaintiff, in purchasing her lot upon the street in question after the resolution of the common council placing said street under the jurisdiction of the department of parks and boulevards was passed, must be held to have done so with the knowledge that the power to enact said legislation implied a power to rescind and therefore that at any time thereafter the common council might, as it ultimately did, withdraw said street from the jurisdiction of the department of parks and boulevards and return it to its status as a common or ordinary street, improvement of which in the first instance is, under the charter assessable to the abutting owner.

A decree should be entered in this court dismissing plaintiff's bill of complaint with costs.

Kuhn, J., concurred with Brooke, J.

The late Justice Ostrander took no part in this decision.