MARTIN *v.* DeYOUNG.

1. SALES—CONTRACTS—MEETING OF MINDS—INTENT—QUESTION FOR JURY.

In an action for damages for the breach of a contract of sale, where defendant denied that any contract was made, the intent of the parties, and meeting of their minds within the scope of fair inference and legitimate implica-

tion from what they said and did, under the evidence, *held*, within the field of facts and for the jury.[1]

2. APPEAL AND ERROR—WHERE JUDGMENT NON OBSTANTE ENTERED FOR DEFENDANT PLAINTIFF'S TESTIMONY MUST BE FAVORABLY CONSIDERED.

In reviewing a judgment *non obstante veredicto* in favor of defendant, in an action for damages for the breach of a contract, where the decision of the trial court was based on the ground that no meeting of minds had been shown, the Supreme Court must take the plaintiff's testimony as true and give it the most favorable construction possible.[2]

3. SALES—CONTRACTS—EFFECT OF EVIDENCE FAVORABLY CONSIDERED SUFFICIENT TO ESTABLISH CONTRACT.

Taking the plaintiff's testimony as true and giving it the most favorable construction possible, *held*, that there can be no doubt as to what the parties understood and intended in the instant case.[3]

4. CONTRACTS — FAILURE TO SPECIFY INTEREST ON INDEBTEDNESS DOES NOT INVALIDATE CONTRACT OR NOTE.

Failure to specify the rate of interest on an indebtedness does not invalidate the contract, neither does it invalidate the note evidencing such indebtedness.[4]

5. SAME—FAILURE TO SET EXACT TIME FOR PERFORMANCE DOES NOT INVALIDATE CONTRACT—REASONABLE TIME IMPLIED.

The fact that no exact time for performance is set in a contract does not render it invalid, since the law implies generally that the performance is to take place within a reasonable time.[5]

6. SALES—CONTRACTS—BREACH—DAMAGES.

A verdict for $500 damages for the breach of a contract for the sale of a garage business, where plaintiff gave up a position paying him $200 a month, and moved his family to the town where said business was located, cannot be said to be speculative or excessive, and were such as under the circumstances shown might reasonably be presumed within contemplation of the parties as a probable result of said breach.[6]

Error to Allegan; Cross (Orien S.), J.    Submitted

[1]Sales, 35 Cyc. p. 650; [2]Appeal and Error, 4 C. J. § 2739; [3]Sales, 35 Cyc. p. 631; [4]Bills and Notes, 8 C. J. § 253 (Anno); Contracts, 13 C. J. § 60 (Anno); [5]Contracts, 13 C. J. §§ 60, 776; [6]Damages, 17 C. J. § 466; Sales, 35 Cyc. pp. 632, 642, 645.

January 8, 1925.   (Docket No. 46.)    Decided October 1, 1925.

Case by Edward W. Martin against John DeYoung for breach of a contract of sale.    Judgment for defendant *non obstante veredicto*.    Plaintiff brings error.    Reversed, and judgment entered for plaintiff.

*Clare E. Hoffman,* for appellant.

*Wilkes & Stone,* for appellee.

STEERE, J.    This action was brought to recover damages for breach of a contract for sale to plaintiff by defendant of a garage business and stock in the city of Allegan.    Defendant denied the contract.    The case was tried in the Allegan county circuit court before a jury.    At close of the testimony defendant moved for a directed verdict for the reason no contract had been proven.    The court reserved decision under the statute and submitted the case to the jury, which rendered a verdict for plaintiff in the sum of $500.    Defendant then moved for a judgment *non obstante*.    The court concluded there was no testimony tending to show the minds of the parties met upon the kind of note to be given, time of payment or rate of interest, and therefore no binding contract, but finding it admitted "plaintiff paid defendant $50 to apply on the purchase price" the court ordered "the verdict of the jury in excess of that amount be set aside and a judgment be entered for the plaintiff for the sum of $50 and interest at 5% from date of payment to date." Judgment was entered accordingly on February 13, 1924.

On July 7, 1923, Martin, who was then living in Detroit with permanent employment in the traffic department of the Pere Marquette Railway Company at $200 per month, learned through an acquaintance that DeYoung was running a garage business in Allegan,

selling Maxwell and Chandler autos with accessories, gasoline, etc., and had offered the business for sale. He went to Allegan and saw DeYoung about it. The latter told him he wanted to go to California and would sell him the business for just what the property would inventory at, on the prices he had purchased it for. Negotiations followed resulting in an admitted tentative agreement under which DeYoung was to make an inventory of the property, which he said would run to about $3,500, and send it to Martin. Just what further was then said or agreed upon is somewhat in dispute. Martin testified that in their negotiations on July 7th DeYoung told him inventory would run about $3,500 and he explained his financial circumstances to DeYoung, telling him he could pay down $1,000 in cash, and would give his note for the balance with chattel mortgage on the stock and new stock that came in to make the note good; that DeYoung replied, "Any way you say. I want to go to California. I promised my wife I would go and take her. I want to know the business was sold." That Martin looked over the town and business prospects and finally told DeYoung if he would take $1,000 cash and Martin's note for a reasonable length of time protected by a chattel mortgage he would take over the business, but before final decision he wanted to know somewhere near what the figures would be in the inventory, saying: "He told me on the night of July 7th that $1,000 cash and my personal note, secured by chattel mortgage, would be satisfactory."

DeYoung testified that nothing was said about the terms of payment, because Martin wanted the inventory first, and he promised to send him an inventory, but no mention was made at that time of any note or mortgage or how much cash he would pay down; cash was not mentioned but he "presumed likely it was going to be a cash deal."

Whatever may have passed between them on July 7th, on July 9th DeYoung wrote Martin inclosing an inventory of the property amounting to $3,950, stating in part:

"I am willing to stay until August 1st and deduct everything sold from this inventory, but of course want to make sure of it, at that time, but would like it sooner if possible for it will take me some time to get ready and I know the Maxwell people would like to close a dealer as soon as possible here, so if you will give me a definite answer, I can get in touch with them regarding agency, also a check to bind the sale until August 1st, then I know where I am at."

On July 11th Martin wrote DeYoung acknowledging receipt of the inventory, etc., concluding: "Will advise you definitely very soon now and forward a check should I decide in the affirmative." Three days later he wired DeYoung, saying: "Everything is satisfactory for August 1st letter and inclosure to follow." On the 16th of July he sent DeYoung a letter inclosing a check for $50, saying: "Enclosed find my check for $50 as evidence of my good faith in the matter and taking over the business of the Allegan Motor Sales Company," asking to be advised in regard to whether or not a certain sedan was sold. On July 14th, DeYoung wrote Martin: "Received your telegram this a. m. and note contents. Well, everything is satisfactory with me, I have sold the sedan and got cash proposition on it and no trade in."

Touching DeYoung's understanding of the situation at this stage of the proceedings, he was asked and answered:

"*Q.* You considered when you got that check you were selling the business?

"*A.* Yes, sir, I thought I had the business sold when I got the $50 deposit.

"*Q.* You considered at that time that you had sold it?

"*A*. When I got the $50 I thought the deal was made then; that he bought the business. * * *

"*Q*. You considered it a sale then?

"*A*. When I got the $50 check I thought Martin was coming over to run the business.

"*Q*. You thought you had sold it to him?

"*A*. Yes, sir, I did."

On July 22d Martin went to Kalamazoo and secured the agency at Allegan for the Maxwell car. He gave up his position, had letter heads printed for the garage business and on July 29th moved to Allegan to take over the business. DeYoung introduced him to a Mr. Mosier from whom he had leased the building where the garage was, as his new landlord, and Martin paid Mosier $80 for the next month's rent which was, however, later returned to him. He offered DeYoung the $1,000 with his note secured by chattel mortgage according to the terms of their agreement as he claimed, but DeYoung refused to accept the same and demanded cash in full. Martin testifies that he then said to him, "You agreed to accept the thousand dollars and my note for the balance covered by a chattel mortgage," to which DeYoung merely replied, "Well, it has got to be cash." As situated, Martin made further effort to induce DeYoung to carry out the deal, offering to increase the payment to $1,500, but DeYoung positively refused to accept or to close the deal for anything besides cash, or a note which would be accepted by a bank as cash, and when asked to at least return the $50 which had been paid he refused to do so at that time. Claiming to have been put to expense in loss of time and money paid out of over $600, plaintiff brought this suit.

The controlling question involved here is whether, after showing the parties had agreed upon the goods to be sold, price to be paid, time for delivery of possession and payment of $50 earnest money, plaintiff's testimony, viewed in its most favorable light, failed to

cover other essentials of a valid contract of purchase and sale between the parties. In submitting that question to the jury the court said:

"In order to constitute a valid binding contract it is not necessary that all of the terms be embodied in the talk. There are many terms not actually expressed in an offer which may be implied as a matter of law, which are binding on both parties after acceptance, as though actually spoken or written into the contract. A contract may include not only what the parties actually write down or say, but all of those things which the law implies as a part of it, and likewise all matters which both the parties intend to express but do not. * * *

"In order to make a binding contract in this case it was necessary for the parties to have agreed not only as to the property that was to be sold and the price that was to be paid, but also as to the terms and conditions of the payment and if you find in this case that the parties did agree upon the price and the property, but did not agree upon the manner of payment, that is, the time in which the payment was to be made, and the manner in which it was to be paid, then I charge you that there is no binding contract between the parties, and if you so find the plaintiff could not recover damages in this suit, except for the fifty dollars advance payment."

So instructed, the jury found in plaintiff's favor on the questions of fact involved essential to a valid contract including "all those things which the law implies as a part of it, and likewise all matters which both the parties intend to express but do not." The intent of the contracting parties and meeting of their minds, within the scope of fair inference and legitimate implication from what they said and did, was within the field of facts and for the jury.

In *McConnell* v. *Harrell & Nicholson Co.*, 183 Mich. 369, where there had been a series of letters and oral negotiations between the parties, it was said relative to intent:

"Whether these letters constitute a complete contract or whether they were but steps in negotiations leading up to one, is a question of the intention of the parties" (citing cases).

As to what the parties understood and intended in the instant case there can be no doubt, taking plaintiff's testimony as true and giving it the most favorable construction as we must (*Quigley* v. *Yellow Taxicab Co.*, 225 Mich. 275). They met on July 7th, negotiated and came to an agreement on the terms of a unilateral contract of sale and purchase, then left subject to plaintiff's acceptance on approval of an inventory which defendant promised to and did send him two days later. To plaintiff the tentative agreement was in its nature an option to be accepted within a reasonable time after receiving the inventory and not binding on either party unless he gave a "definite answer" of acceptance and sent a "check to bind the sale" as requested. He timely accepted and sent a check as payment on the contract which defendant accepted and cashed. There can be no question as to the intent and belief of the parties at that time. DeYoung said that when he received plaintiff's letter and the $50 he thought the deal was made, that Martin had "bought the business." Martin believed he had bought the business. He not only so testified but resigned his employment, moved his family and household goods from Detroit to Allegan, paid $50 for the Maxwell agency, $80 for the first month's rent of the building where the business was located, and offered DeYoung the cash payment of $1,000 with note and mortgage for the balance of the purchase price.

The reasons given by the trial court for holding the contract was not binding were that—

"The minds of the parties did not meet upon the kind of a note to be given for the balance of the purchase price, the time of payment of the note, nor the rate of interest."

Failure to specify the rate of interest on an indebtedness does not invalidate the contract. *Janiszewski* v. *Shank,* 230 Mich. 189, and cases there cited. Neither does it invalidate the note evidencing such indebtedness. The kind of note to be given was a note secured by mortgage, presumptively containing the essentials of a valid note representing the deferred payment under the contract made payable within a reasonable time or as the parties might agree.

But this action is upon a breach of the contract itself. Taking plaintiff's testimony as true, there was an agreement that the deferred payment on the contract, as evidenced by a note and secured by mortgage, should run for a *reasonable length of time.* He testified on direct-examination:

"I told him I was in a position to pay one thousand dollars cash and give him my note for the balance. Nothing was said about the time of the note. Any reasonable length of time I would be willing to give, and I would give him a chattel mortgage to make the note good on the stock and any new stock that came in."

To this he states defendant replied, "Any way you say." On cross-examination he repeated the statement as follows:

"I told him if he would take one thousand cash and my note for a reasonable length of time covered by chattel mortgage, that I would take the business over. * * *

"Q. Was anything said as to when that note was to be due?

"A. Nothing more than its being a reasonable length of time; no set date."

The fact that no exact time for performance is set in a contract does not render it invalid.

"It will be noted that the contract, enforcement of which is sought, is silent as to the time of performance.

The law would, therefore, imply that the performance was intended by the parties within a reasonable time." *McArthur* v. *City of Cheboygan,* 156 Mich. 152.

"Where no time for performance is fixed by the contract, the law implies generally that the performance is to take place within a reasonable time." 13 C. J. p. 683; citing many decisions from various jurisdictions, including this State.

The court submitted the case to the jury on the legitimate issues raised by the testimony in a clear and careful charge fully as fair and favorable to defendant as the law entitled him to. The damages awarded were not speculative nor excessive, and were such as under the circumstances shown might reasonably be presumed within contemplation of the parties as a probable result of a breach of the contract.

The order setting the verdict aside and judgment following must be vacated, and judgment entered in plaintiff's favor for the amount of the verdict. The case is therefore remanded to the trial court for further proceedings in harmony with this opinion, with costs of this court to plaintiff.

MCDONALD, C. J., and CLARK, BIRD, SHARPE, MOORE, FELLOWS, and WIEST, JJ., concurred.