## COIT *v.* CITY OF GRAND RAPIDS.[1]

1. MUNICIPAL CORPORATIONS—CONTRACTS—CONSIDERATION—ULTRA VIRES.

The fact that a part of the consideration for a grant of land to a city is an agreement by the city to do something which is *ultra vires*, but neither *malum prohibitum* nor *malum in se*, will not relieve the city from liability as to the remainder of the consideration.

2. SAME—DEFECTIVE EXECUTION—ESTOPPEL.

A municipality cannot retain the benefits of a contract which has been fully performed by the other party, and which is neither *malum prohibitum* nor *malum in se*, and at the same time deny the validity of the contract because of defects in the manner of its execution.

3. SAME—CONSTRUCTION OF SEWERS—EXEMPTIONS FROM TAXATION.

Where the common council of a city was by charter given exclusive control over the construction and maintenance of sewers, with the right to purchase lands therefor, and was also authorized to determine what proportion of the cost of construction should be raised by assessment upon the lands benefited, to fix upon the amount of such cost, to establish the assessment district, and, as a board of review, to pass finally upon the apportionment of benefits, it was *held* that an agreement by the council, in consideration of a grant to the city of the right to construct a sewer across certain lands, to exempt such lands, with other lands of the grantor, from assessment for the *construction* of the sewer, was valid and enforceable, even though the original assessment of benefits was, under the charter, to be made by a board of commissioners; or, at the least, that the city, having received the benefits of the contract, was estopped to deny the authority of the council to enter into the same, the defect being one of form only and not of substance.

4. SAME.

As to the effect of an agreement to exempt such lands from taxation for the *maintenance* of the sewer under such circumstances,—*quære*.

MONTGOMERY, J., dissenting.

---

[1] Rehearing denied May 24, 1898.

Error to superior court of Grand Rapids; Burlingame, J. Submitted June 9, 1897. Decided January 18, 1898.

*Assumpsit* by Charles W. Coit, individually, as executor, and as assignee of Elizabeth C. Haines, against the city of Grand Rapids, to recover taxes paid under protest. From a judgment for plaintiff, defendant brings error. Affirmed.

*Henry J. Felker*, City Attorney, for appellant.

*C. H. Gleason* (*Arthur Lowell*, of counsel), for appellee.

GRANT, C. J. The common council of the defendant city is, by its charter, given the exclusive control over the construction and maintenance of sewers. It is also clothed with the express power to purchase lands for that purpose. Charter, tit. 3, § 10, subds. 39, 76 (Act No. 270, Local Acts 1891). The common council deemed it necessary for the public health that the Prescott-street sewer be extended so as to empty into Grand river at a greater distance below the city than it then did. The proposed extension was for 80 rods across lands owned by the plaintiffs. These lands were low (from 7 to 14 feet below the established grade of the streets), subject to overflow, were not then suitable for residence purposes, and were occupied only for pasturage. The mouth of the sewer is at about the center of the plaintiffs' lands, where it empties into the river. A committee was appointed to obtain, by purchase, if possible, lands for the construction of the sewer, which was large, having an inside diameter of seven feet. The right of way and necessary land, with the perpetual right of ingress and egress, was obtained from the plaintiffs, as well as others; deeds were executed, recorded; the sewer constructed; and the city put in possession. The consideration of the deeds from the plaintiffs was one dollar, and the agreement that they should not be assessed for the construction and maintenance of the

sewer. All the proceedings for the purchase of the land were regular. The common council at first undertook to carry out the agreement, and, under the authority conferred upon it, established an assessment district, leaving out the lands of plaintiffs. This assessment was again revised, excluding the land. The council met the third time, ignored the contract with plaintiffs, included their lands in the assessment district, and assessed their portion of the expense of construction at $2,617.22. It is just to the council to assume that they repudiated the contract because of a supposed want of power to make it. The court below, however, finds that the council carried out similar contracts with other parties, by redeeding to them, without consideration other than this agreement, their lands which had been sold for nonpayment of the assessment.

The contract was one of sale and purchase. The deed was not intended as a gift. The sole defense is that it was *ultra vires.* If this be so, it is because the consideration was exemption from taxation. It does not exempt from taxation generally,—either State, county, or municipal,— but only from liability to assessment for the construction of the sewer. We need not consider that part of the contract exempting from taxation to maintain the sewer. That is not before us. The charter does not provide for maintaining sewers by assessment districts, but they are to be maintained at the common expense, paid from a common fund. For this purpose the city is divided into two districts,—one on each side of the river. Special assessment districts are provided for only to pay the cost of construction. If, however, this clause in regard to maintenance were *ultra vires,* the contract is divisible, and the remainder will be enforced.

" There is no rule of law or of morals which relieves the recipient of the substantial benefits of a partially executed contract from the obligation to perform or pay that part of the consideration which he can perform or pay because the performance of an insignificant portion of it is beyond his powers. On the other hand, the true rule is, and ought

to be, the converse of that proposition. It is that when a part of a divisible contract is *ultra vires*, but neither *malum in se* nor *malum prohibitum*, the remainder may be enforced." *Illinois Trust & Sav. Bank* v. *City of Arkansas City*, 22 C. C. A. 171, 76 Fed. 271.

If the council could not purchase, it would be compelled to resort to condemnation proceedings. All the other lands owned by plaintiffs, and supposed by the parties at that time to be specially benefited by the sewer, were included in the assessment district, and the assessments paid. The council could have agreed with plaintiffs to pay a money consideration. If the contract had been that the city would pay whatever amount should be assessed as their share of construction, would it not have been valid? Practically, this is what was done. By this means litigation was avoided. Plaintiffs received nothing for the land conveyed, or for the damage by emptying the filth of the city into the river at the center of their lands. The contract would not vitiate the assessment. Plaintiffs are not exempt from a share of the burden. On the contrary, they have contributed land, and suffered damage, as their share of it. Who shall say that it is not their full share?

"It is easy to perceive that there may be a difference in principle between a complete exemption from a necessary burden of government, and an agreement that the burden shall be laid and borne in a particular manner only. Mr. Justice M'Lean has hinted at this distinction in *State Bank of Ohio* v. *Knoop*, 16 How. 389." *East Saginaw Manfg. Co.* v. *City of East Saginaw*, 19 Mich. 259.

Another taxpayer could not well show that he was injured by the arrangement, or that his proportion of the assessment was less than it would have been had the council condemned, or agreed upon a specific amount as damages and the value of the land. *Page* v. *City of St. Louis*, 20 Mo. 136; *Williams* v. *Inhabitants of School Dist. No. 1*, 21 Pick. 75. In the latter case the assessors omitted to tax an inhabitant who was very poor. The validity of the assessment was attacked for this reason.

Chief Justice Shaw said, "If this was done through error of judgment, or any error and mistake of law in this respect, it does not invalidate the whole tax." The constitution of Iowa provided that the property of corporations should be liable to taxation the same as the property of individuals. A private corporation entered into a contract with the city of Davenport to supply the city with water, and the city agreed to exempt it from municipal taxation for 25 years. It was held that the arrangement did not amount to exemption from taxation, but, in effect, applied "the taxes, as they would otherwise become due, in part payment of, or in part consideration for, the water rent. * * * It might have required the payment of the taxes, and then returned the amount as part pay for water rent. The manner of doing it cannot defeat the power to do it." *Grant* v. *City of Davenport*, 36 Iowa, 406. See, also, *City of St. Louis* v. *Armstrong*, 56 Mo. 298; *City of Palestine* v. *Barnes*, 50 Tex. 538.

It is said, however, that the authority to determine the amount of the benefit is not reposed in the common council, but in the board of review, acting as a board of commissioners. To this I reply: *First*, that the common council possesses the power to purchase, and to fix the compensation; and, *second*, that the power to fix the assessment is finally vested in the council. The council fixes the assessment district, and the cost. The board of review and equalization, consisting of three, then apportions the cost among the residents of the district according to supposed benefits. A report of their proceedings is then made to the common council, who sit as a board of review, and have the entire control over the matter. The commissioners have no power to assess damages, or fix the boundaries of the assessment district. Plaintiffs appealed to the council, sitting as a board of review; and, as already stated, the contract was ignored.

The case of *Weeks* v. *City of Milwaukee*, 10 Wis. 242, does not, in my judgment, affect the question here presented. The question was not there involved. In that

case the assessing officers undertook to suspend the law, and absolutely relieve a very valuable piece of taxable property, and impose additional burden on the rest. In this case there is no attempt to relieve the plaintiffs from taxation, or from their share of the public burdens. The common council, the final arbiter in the matter, agreed upon what their fair share was; and plaintiffs paid it, by deeding the lands, with the perpetual right of ingress and egress, and agreeing to perpetually charge their adjoining lands with the damage resulting from the construction of the sewer and emptying it into the river opposite. *In re First Street*, 66 Mich. 42, is not applicable here. The principle there established is that the common council cannot enter into a contract by which the city in all future time may be precluded from extending its streets, and that was the sole question involved.

If, however, the common council exceeded its authority, it was in form only, not in substance. It did nothing which might not have been accomplished in another and legal manner, under the charter. The contract was fairly and in good faith made, and is fully executed. The city has derived, and is in the full enjoyment of, all its benefits. It cannot and does not offer to restore the consideration, or place plaintiffs *in statu quo*. If we conceded the premises assumed by defendant, viz., that the contract was wholly *ultra vires*, we might be compelled to reach the conclusion that the city could not be estopped to set up its invalidity.

The defense of *ultra vires* in this case is most inequitable and unjust. It should not be sustained unless the rigid rules of law require it. "The good faith of government should never be held less sacred than that of individuals." Where the executed contract is neither *malum in se* nor *malum prohibitum*, but can only be avoided because of defects in the manner of its execution, the corporation cannot retain the benefits and deny its authority. *Dewey* v. *Railway Co.*, 91 Mich. 351; *Day* v. *Buggy Co.*, 57 Mich. 151 (58 Am. Rep. 352); *Carson City Sav.*

*Bank* v. *Elevator Co.*, 90 Mich. 550 (30 Am. St. Rep. 454); *Turner* v. *Cruzen*, 70 Iowa, 204. "The doctrine of *ultra vires*, when invoked for or against a corporation, should not be allowed to prevail where it would defeat the ends of justice." *Ohio, etc., R. Co.* v. *McCarthy*, 96 U. S. 267. In a suit to recover rent upon a lease made by a municipality, held, that the lessee could not defend upon the ground that it had no legal right to enter into it. *Starin* v. *Edson*, 112 N. Y. 206. Where all leases were required to be made at public auction, and this provision was ignored, held to constitute no defense to an action upon the lease, where the defendant had had the full benefit of the contract. *Mayor, etc., of New York* v. *Sonneborn*, 113 N. Y. 423. Where a municipality leased property, and agreed to refund to the lessee the value of improvements. although the contract was *ultra vires*, it was held:

"Assuming that the agreement of August 4, 1888, was at its inception, and while it remained wholly executory, *ultra vires*, and therefore unenforceable against the municipality, because in excess of its lawful authority to incur an indebtedness, it remains that the agreement was fully performed on the part of the Staten Island Rapid-Transit Company; such performance in reliance upon the promise to indemnify the latter corporation having resulted in the defendant municipal corporation's gain of valuable improvements to its wharf property. Under such circumstances, a plea of *ultra vires* must be regarded as inequitable, and would be unavailable to the defendant municipal corporation as a defense to the Staten Island Rapid-Transit Company's demand for payment of the value of its improvements." *Wilkins* v. *Mayor, etc., of New York*, (Com. Pl.) 30 N. Y. Supp. 424.

Herman says:

"The same result is produced in like manner in many instances where a corporation, having enjoyed the fruits of a contract fairly made, denies, when called to account, the existence of the corporate power to make it. The principle of estoppel, thus applied, has its foundation in a wise and salutary policy. It is a means of repose. It promotes fair dealing. It cannot be made an instrument of

wrong or oppression, and it often gives triumph to right and justice where nothing else known to our jurisprudence can, by its operation, secure those ends. Like the statute of limitations, it is a conservator; and, without it, society could not well go on." 2 Herm. Estop. § 1181.

See, also, *City of Buffalo* v. *Balcom,* 134 N. Y. 532.

"Mere irregularities of action, not going to the essentials of the power," are not sufficient to defeat the exercise of the power. Cooley, Const. Lim. (6th Ed.) 269.

Stated most strongly for defendant, the situation is this: The result was legal, but the method by which it was reached was illegal. In such case the law does not permit a municipality to retain the fruits of its contract, and deny its validity.

I am for affirming the judgment.

Moore and Long, JJ., concurred with Grant, C. J.
Hooker, J., did not sit.

Montgomery, J. (*dissenting*). The plaintiff is the owner of various parcels of land in the First and Twelfth wards of the city of Grand Rapids, in his own right and as executor, and Elizabeth C. Haines owns other lands. The construction of a public sewer across *certain* of these lands was contemplated. The common council entered into an agreement with the plaintiff and Mrs. Haines, by the terms of which the plaintiff and Mrs. Haines granted to the city the right to construct a sewer across certain of these lands, and the city, on its part, agreed to exempt the remainder of the lands of the plaintiff and Mrs. Haines in the said wards, lying west of Grandville avenue, from assessment for benefits. The sewer was constructed. An assessment was made, pursuant to charter provisions, which included the lands of plaintiff and Mrs. Haines. Plaintiff and Mrs. Haines paid the amount under protest, and, Mrs. Haines having assigned to plaintiff, he brings this action to recover the amount so paid. The questions presented are:

*First.* Had the council the power to contract to exempt plaintiff's lands from assessment?

*Second.* If not, the contract having been executed on the plaintiff's behalf, is the city estopped from asserting want of power?

*Third.* Can the plaintiff recover on the contract, or must he recover, if at all, on the *quantum meruit?*

1. By section 3, tit. 6, of the charter of Grand Rapids, it is provided that the common council may determine whether the whole, or what portion, of an assessment to defray the expenses of any public improvement shall be assessed to the owners of houses and lands to be benefited thereby; and by sections 4–6 the members of the board of review and equalization are constituted commissioners to levy an assessment on the lands benefited. In view of these provisions, it is not competent for the council to barter away the authority to levy an assessment against any particular description of property deriving a benefit from such improvement. If this can be done in one instance, it is difficult to see just where the limit can be fixed; and it is obvious that an exemption of one or more descriptions of property will increase the assessments of benefits against others. It may be suggested that the council, in making the contract in question, must have taken into account the benefits to be derived to the lands of plaintiff by the improvement, and to have determined that the value of the easement acquired equaled the amount of such improvement. The obvious answer is that the authority to determine the amount of this benefit is not reposed in the common council, but in the board of review, sitting as a board of commissioners, under a special oath.

The question of the power of the State to contract to exempt from taxation need not be considered. Such power is certainly a restricted one. Cooley, Tax'n (2d Ed.), 66 *et seq.* But the invalidity here rests, not in the excessive exercise of power by the sovereignty, but in the fact that there has been delegated to the municipality no such power to exempt from assessments for benefits, and

that by the charter such power is, by clear implication, excluded. See, as bearing on the subject, *In re First Street*, 66 Mich. 42; Dill. Mun. Corp. (4th Ed.) §§ 97, 780; *Weeks* v. *City of Milwaukee*, 10 Wis. 242; Cooley, Tax'n (2d Ed.), 215. The question is not whether the authority may be delegated to the municipality to exempt certain property from taxation, or whether, if this be competent, the council may, by contract, tie its hands for the future; but the controlling fact is that no such power is delegated to the common council in this case. We do not overlook the contention of plaintiff's counsel that this power may be implied from the authority delegated by section 3109*a*, 3 How. Stat., to acquire by purchase an easement in private lands for the purpose of constructing sewers. We think, however, that the power to contract to exempt other property of the owner from assessment is not to be implied, and that the statute cannot be held to work a repeal of the charter provisions vesting the authority to make the assessment in the board of review. In the cases cited by plaintiff's counsel (*Grant* v. *City of Davenport*, 36 Iowa, 396; *City of Palestine* v. *Barnes*, 50 Tex. 538; *City of St. Louis* v. *Armstrong*, 56 Mo. 298), where the municipality offered to exempt certain property from taxation for a specified time, the agreement was apparently made in each instance by the municipal officers authorized to spread the tax. The common council had no such power in the present case.

2. The settled rule is that executed contracts of private corporations, not unlawful, but *ultra vires*, will be treated as binding upon the corporation. *Carson City Sav. Bank* v. *Elevator Co.*, 90 Mich. 550 (30 Am. St. Rep. 454); *Dewey* v. *Railway Co.*, 91 Mich. 351. But the weight of authority is opposed to the contention that a municipal corporation can estop itself from asserting a want of power to enter into an engagement which is in fact *ultra vires*. As was said in *Newbery* v. *Fox*, 37 Minn. 141 (5 Am. St. Rep. 830):

"The doctrine of *ultra vires* has, with good reason, been applied with greater strictness to municipal bodies than to private corporations; and, in general, a municipality is not estopped from denying the validity of a contract made by its officers, when there has been no authority for making such a contract."

One reason for so restricting the effect of *ultra vires* contracts to municipal corporations is that those engaging in such contracts are bound to take notice of the limitations upon the powers of municipal bodies. *Rens* v. *City of Grand Rapids*, 73 Mich. 237; *Bogart* v. *Township of Lamotte*, 79 Mich. 294. In 1 Dill. Mun. Corp. (4th Ed.) § 457, it is said:

"The duties and powers of the officers or public agents of the corporation are prescribed by statute or charter, which all persons not only may know, but are bound to know. The opposite doctrine would be fraught with such danger, and accompanied with such abuse, that it would soon end in the ruin of municipalities, or be legislatively overthrown."

See, also, Cooley, Const. Lim. (6th Ed.) 261; 1 Beach, Pub. Corp. § 217; *Pettis* v. *Johnson*, 56 Ind. 139; *Niles Waterworks* v. *Mayor, etc., of Niles*, 59 Mich. 311; *City of Detroit* v. *Michigan Paving Co.*, 36 Mich. 335.

3. It follows that the *ultra vires* agreement to exempt the property of the plaintiff from assessment cannot be made the basis of a recovery. There is no finding, supported by evidence, showing the actual value of the right conveyed by plaintiff, and it may not be profitable to inquire whether the city is liable for such actual value, as, if such liability exists, it is not based upon the contract, but, according to the better authorities, the recovery, if any, is upon *quantum meruit*. 1 Dill. Mun. Corp. (4th Ed.) § 444; 1 Beach, Pub. Corp. §§ 226, 227.

Judgment should be reversed, with costs, and a new trial ordered.