HATCH v. MAPLE VALLEY TOWNSHIP UNIT SCHOOL.
PETERSEN v. SAME.

1. Schools and School Districts—Township District as Successor of Component Districts.

Under chapter of the school code providing for organizing a single school district for an entire township, the township school district succeeds to the property, debts and liabilities of the component districts (2 Comp. Laws 1929, § 7131 et seq.).

2. Same—School Board—Power to Call Special Meeting of Electors—Completion of Building.

A school board of a school district has the power to call a special meeting of the electors for the purpose of passing upon the question of whether or not the district may borrow funds to complete a school building under the course of construction (2 Comp. Laws 1929, § 7486, as amended by Act No. 54, Pub. Acts 1931).

3. Same—School Board—Power to Erect School Buildings—Funds.

The power conferred upon a school board to erect school buildings is limited to expenditures "out of the fund provided for that purpose" (2 Comp. Laws 1929, §§ 7435, 7432, subds. 2, 3, 8, and § 7486, as amended by Act No. 54, Pub. Acts 1931).

4. Same—School Board—Voting Taxes—School Sites and Buildings.

The power of a school board to vote taxes for certain purposes does not include the voting of taxes for a school site or for constructing a school building (2 Comp. Laws 1929, § 7432, subds. 2, 3, 8, and § 7486, as amended by Act No. 54, Pub. Acts 1931).

5. Same—Borrowing Money—Voting Taxes—School Building.

The power to levy taxes or borrow money for the construction of a school building is vested in the electors of a school dis-

trict, not the school board (2 Comp. Laws 1929, § 7432, subds. 2, 3, 8, and § 7486, as amended by Act No. 54, Pub. Acts 1931).

6. EVIDENCE—AFFIRMATIVE DEFENSE—BURDEN OF PROOF.

The burden of proving an affirmative defense is on the defendant.

7. OFFICERS—SCHOOL DISTRICTS—PRESUMPTIONS—CONTRACTS.

The officers of a school district are presumed to have acted legally and not to have transcended their statutory powers in making a contract to build a school building.

8. MUNICIPAL CORPORATIONS—INVALID CONTRACTS—REASONABLE COMPENSATION.

In an action on a contract which is not *ultra vires*, a municipal corporation may not shield itself behind a defense based on the manner in which the contract was made, and retain the benefits of the contract, without tendering at least a reasonable compensation for the benefits received.

9. SCHOOLS AND SCHOOL DISTRICTS—INVALID CONTRACTS—ERECTION OF SCHOOL BUILDING.

Although a contract with a school district for work and materials furnished for erecting a school building is invalid, the parties furnishing same are entitled to recover the reasonable value thereof, where the benefits are retained and enjoyed by the district.

10. MUNICIPAL CORPORATIONS—INTRA VIRES CONTRACTS BINDING THOUGH DIRECTORY PROVISIONS OF STATUTE ARE DISREGARDED.

Where the power exists in a municipal corporation to bind itself and it does make a contract *intra vires*, it will be bound even though it may have proceeded irregularly and in disregard of directory provisions as to the exercise of its power.

11. SCHOOLS AND SCHOOL DISTRICTS—ERECTION OF SCHOOL BUILDING —STATUTES—CONTRACTS—ULTRA VIRES.

Where the electors of a school district had authorized the construction of a school building and the expenditure of money, the school board had authority to contract for the construction of the school building, hence the acts of the school board in 'so doing were not *ultra vires* even though the method of carrying into effect the powers conferred was not in compliance with the statute (2 Comp. Laws 1929, §§ 7435, 7432, subds. 2, 3, 8, and § 7486, as amended by Act No. 54, Pub. Acts 1931).

12. ESTOPPEL—PUBLIC CORPORATIONS.

Since the good faith of government should never be less sacred than that of individuals, where an executed contract is neither

*malum in se* nor *malum prohibitum,* but can only be avoided because of defects in manner of its execution, a public corporation cannot retain the benefits and deny the authority.

13. SCHOOLS AND SCHOOL DISTRICTS—BUILDING FUND—ULTRA VIRES —NONJURY CASE—FINDING OF COURT.

Where record sustains finding of circuit judge in nonjury actions against school district that defendant failed to prove there was not a sufficient balance in the building fund of the district out of sums voted by the electors at the time obligations to plaintiff were incurred to pay plaintiffs in full, the defense of *ultra vires* was not sustained, as plaintiffs are not required to furnish material and services at their own risk during construction of a school building and await a determination when building was completed as to whether its total cost exceeded amount voted (2 Comp. Laws 1929, §§ 7435, 7432, subds. 2, 3, 8, and § 7486, as amended by Act No. 54, Pub. Acts 1931).

14. ASSUMPSIT—COMMON COUNTS—PRIMA FACIE CASE.

Plaintiffs in actions of assumpsit against school district for work done and materials furnished in the construction of a school building in conjunction with Federal Works Progress Administration projects made a prima facie case on the common counts by proving the furnishing of the services and material at the request of the school board, the fair value thereof, that the district had used the same and not paid for them.

15. EVIDENCE—JUDICIAL NOTICE—FEDERAL WORKS PROGRESS ADMINISTRATION.

Judicial notice is taken of the executive order creating the Federal Works Progress Administration under acts of congress and of its method of operation to the extent that the same are commonly-known and accepted facts.

16. MUNICIPAL CORPORATIONS—CONTRACTS—EXECUTION OF INSTRUMENTS—RETENTION OF BENEFITS.

A municipality cannot retain the benefits of a contract which has been fully performed by the other party, and which is neither *malum prohibitum* nor *malum in se,* and at the same time deny the validity of the contract because of defects in the manner of its execution.

17. SCHOOLS AND SCHOOL DISTRICTS—BUILDINGS—COMPETITIVE BIDS FOR CONSTRUCTION—PURPOSE OF STATUTE.

The fundamental objective of the school code in providing that competitive bids be obtained before construction of school

buildings be commenced is to secure such buildings at the lowest possible expense (2 Comp. Laws 1929, §§ 7124, 7386, and Act No. 319, pt. 2, chap. 2, §§ 29, 30, Pub. Acts 1927, as added by Act No. 331, Pub. Acts 1931).

18. SAME—CONSTRUCTION OF SCHOOL BUILDING—PRIMA FACIE CASE —EXECUTION OF CONTRACTS—COMPETITIVE BID—FRAUD.

In actions of assumpsit and on the common counts by plaintiffs who had furnished and installed heating and plumbing equipment, hardware, lumber and other merchandise used by the school district in conjunction with Federal Works Progress Administration projects in constructing a school building, the failure of the school board to advertise for and receive competitive bids before construction was commenced on all the material and labor required for the contemplated building does not defeat plaintiffs' right to recover where they made a prima facie case and there is no claim of fraud, collusion, overreaching or excessive costs (2 Comp. Laws 1929, §§ 7124, 7386, 7432, subds. 2, 3, 8, § 7486, as amended by Act No. 54, Pub. Acts 1931; Act No. 319, pt. 2, chap. 2, §§ 29, 30, Pub. Acts 1927, as added by Act No. 331, Pub. Acts 1931).

WIEST, J., dissenting.

Appeal from Montcalm; Davis (Morris K.), J. Submitted October 10, 1944. (Docket Nos. 1, 2, Calendar Nos. 42,718, 42,719.) Decided February 20, 1945.

Assumpsit by Lee H. Hatch against Maple Valley Township Unit School, a school district organized under the laws of Michigan, for work and materials used in building a school house.

Assumpsit by R. W. Petersen and wife in their own right and as assignees against the same school district for merchandise used in construction of the same school house.

Cases consolidated. Judgments for plaintiffs. Defendant appeals. Affirmed.

*Dean S. Face* (*Louis H. Grettenberger* and *Robert S. Tubbs,* of counsel), for plaintiff Hatch.

*Brake & Miel,* for plaintiffs Petersen.

*Paul O. Strawhecker* and *Laurence W. Smith,* for defendant.

Boyles, J.   Plaintiff Hatch brought suit against the defendant school district in assumpsit, adding the common counts, to recover the balance claimed to be due him for furnishing and installing heating and plumbing equipment in a new school building under construction by School District No. 6 Fractional, Trufant, of the townships of Maple Valley in Montcalm county and Spencer in Kent county (hereinafter referred to as the Trufant District).   The Petersens, plaintiffs, brought a separate suit in assumpsit and on the common counts against the defendant for hardware, lumber and other merchandise furnished to said school district and used in constructing the school building.   After the new school building was completed, the Maple Valley Township Unit School, defendant, was organized and the Trufant district was one of the districts encompassed in the new township unit district.   The property of the Trufant district was taken over by the township unit district and settlement made between the districts, under which the township unit district became liable for the debts of the former district.   The two cases were consolidated for trial before the court without jury, judgments were entered for plaintiff Hatch for $1,645.93 and plaintiffs Petersen for $1,362.82.   By stipulation defendant appeals on one record.   The same questions are involved in both cases.

It is conceded that plaintiffs furnished the labor and material as claimed, that they have not been paid, and the amounts are not in dispute. The defense urged is that the electors of the Trufant district had voted only $12,000 for the new school building, that this amount had already been expended, and that there was no liability in excess of that sum. The defendant also claims that inasmuch as the statute requires advertising for and receiving competitive bids, which admittedly was not done, plaintiffs cannot recover.

The defendant township unit district was organized in 1941 and exists by virtue of Act No. 319, pt. 1, chap. 4, Pub. Acts 1927 (2 Comp. Laws 1929, § 7131 et seq. [Stat. Ann. § 15.51 et seq.]). This act will hereinafter be referred to as the school code. The defendant becomes liable for the debts of the Trufant district by virtue of part 1, chap. 4, § 35, of the school code (2 Comp. Laws 1929, § 7165 [Stat. Ann. § 15.85]), which provides:

"All school property, both real and personal, within the limits of the township district as created or organized under this chapter, shall by force of this chapter become the property of the public schools of the township, and all debts and liabilities of the several districts organized as such township districts shall become the debts and liabilities of the said public schools of the township."

In 1937 the Trufant school board adopted a resolution to erect a new school building and called a special meeting of the electors, at which meeting the voters of the district authorized the school building and the borrowing of $10,000 for that purpose. Bonds were sold and the sum of $10,100 realized therefrom. Construction of the new building was

commenced in June, 1938. At a meeting of the Trufant school board in July, 1938, a motion was passed that a contract for the plumbing and heating job be let to Hatch, one of the plaintiffs herein, for $3,758, but no written contract was entered into. On that day there was a balance in the building fund in the hands of the treasurer of the district amounting to $7,329.30. There is no record of the letting of any contract to plaintiffs Petersen, or to any of the people whose claims they hold as assignee. Their claims are for lumber, hardware, building material and numerous small items of merchandise furnished for the construction as it progressed. These items were ordered by a WPA (Federal Works Progress Administration) superintendent or some member of the board.

The original $10,100 derived from bonds being insufficient to complete the construction, the electors of the district at a meeting held in March, 1939, voted to raise 3 mills above the 15-mill limitation, for two years, to provide more money for the new building. Following this authorization by the electors, the Trufant school board by formal action called a meeting of the electors to vote on borrowing money to complete the building. The school board had the power to call this meeting, under part 2, chap. 12, § 1, of the school code, *supra* (2 Comp. Laws 1929, § 7486, as amended by Act No. 54, Pub. Acts 1931 [Comp. Laws Supp. 1940, § 7486, Stat. Ann. § 15.520]). The electors met and voted to borrow an additional $2,000. All of the funds voted by the electors were finally expended on the construction of the new building without paying plaintiffs the balance due them for which these suits were brought. Construction continued until December 1, 1939, when the balance in the building fund had shrunk to $19.41, and the final overdraft October 14,

1940, was $305.91. At the time of the settlement between the Trufant district and the township unit district May 13, 1941, pursuant to the consolidation, there was no balance in the Trufant district building fund and consequently no money from the building fund was turned over to the township unit district.

Can the Trufant district (and therefore the defendant, its successor by statute) be held liable to plaintiffs on either express or implied contracts, when the allowance of their claims would result in exceeding the amount voted by the electors? Counsel for plaintiffs point to the provisions of part 2, chap. 5, § 17, of the school code (2 Comp. Laws 1929, § 7435 [Stat. Ann. § 15.453]), and claim that it authorizes the *school board* to vote a tax for construction of a school building without a vote of the electors. This section provides:

"The district board shall purchase or lease in the corporate name of the district such sites or schoolhouses as shall have been lawfully designated, and shall build, hire, or purchase such schoolhouses as may be necessary *out of the fund provided for that purpose,* and make sale of any site or other property of the district when no longer needed for school purposes when lawfully directed by the qualified voters." (Italics supplied.)

The power conferred on the *school board* to erect school buildings is thus limited to expenditures "out of the fund provided for that purpose."

Section 14, subdivision (2), of the same chapter 5, part 2 (2 Comp. Laws 1929, § 7432 [Stat. Ann. § 15.450]), while it expressly authorizes the *school board* to vote taxes for certain designated purposes, does not include among such purposes the voting of taxes for a school site or for constructing a school building. The intent of the legislature to exclude from such purposes giving any authority to the

school board to vote taxes for constructing a school building is indicated by the next succeeding paragraph (subdivision [3]) which expressly declares that:

"*All such taxes* when collected and received shall be accounted for under the title of '*general fund*'; * * * and all *building and site money* shall be accounted for under the title '*building and site fund.*'"

Subdivision (8) of the same section 14, chapter 5, part 2, of the code provides that:

"No money raised by tax shall be used for any other purpose than that for which it was raised without the consent of a majority of the taxpaying voters of the district present at an annual or special meeting."

Any doubt as to where the power is vested to *borrow* money to pay for a school site, or to erect school buildings, is dissipated by part 2, chap. 12, § 1, of the school code (2 Comp. Laws 1929, § 7486, as amended by Act No. 54, Pub. Acts 1931 [Comp. Laws Supp. 1940, § 7486, Stat. Ann. § 15.520]). It expressly authorizes any school district,

"by a majority vote of the qualified voters of said district, present at an annual meeting or a special meeting called for that purpose, (to) borrow money and issue bonds of the district therefor, to pay for a schoolhouse site or sites, or to pay for an addition or additions of territory to a schoolhouse site or sites, or to erect and furnish school buildings, or to complete school buildings under the course of construction."

It is conceded that the Trufant district was a graded school district (see school code, pt. 1, chap. 3). We find no express statutory authority vested in the *school board* either to levy taxes or to borrow

money for the construction of a school building. These powers are vested in the electors of the school district. Is the fact that the Trufant school board lacked such power a good defense to plaintiffs' suits to recover for the work done and materials furnished by them? In the court below, and again here, the defendant relies on the claim that any contract, express or implied, whereby the Trufant district might become liable to plaintiffs is not binding on the Trufant district, hence not binding on the defendant herein, for the reason that the cost of erecting the school building exceeded the sums voted by the electors of the district for that purpose, and that therefore the incurring of such indebtedness by the school board was *ultra vires* and void. This was set up as an affirmative defense, and the burden of proving the facts to establish the defense is on the defendant.

In *American LaFrance & Foamite Industries, Inc.,* v. *Village of Clifford,* 267 Mich. 326, the defense was that certain action of the common council of a village was *ultra vires* in that the amount involved was in excess of the amount for which the council could obligate the village without a vote of the electors. The court said:

"As against defendant's contention that the alleged contract was *ultra vires,* plaintiff asserts that notwithstanding the burden of proving *ultra vires* is upon the defendant, that defense was not established by the testimony in the case.    *    *    *

"The defendant in its answer affirmatively set up the defense of *ultra vires* and obviously correctly assumed that it had the burden of proof. It is therefore important to ascertain whether or not this defense was affirmatively established by defendant's testimony.

"The officers are presumed to have acted legally and not to have transcended their statutory powers.

*Bishop* v. *Lambert,* 114 Mich. 110.  *  *  * This record sustains plaintiff's contention that the defendant failed to establish its defense of *ultra vires.* As bearing upon the justness of so holding, it may be noted that the defense of *ultra vires* urged in the instant case is wholly technical and utterly void of merit when tested by everyday principles of right and wrong."

The distinction between contracts entered into by a municipality through its public officers, held to be *ultra vires,* and contracts which are not *ultra vires,* has been pointed out in decisions of this court. In *McCurdy* v. *County of Shiawassee,* 154 Mich. 550, plaintiff sought to recover against Shiawassee county on certain promissory notes given by the treasurer of the county pursuant to a resolution to borrow the money, passed by the board of supervisors. The board of supervisors had no power to borrow money for current expenses. Lacking such powers, the action of the board was held to be *ultra vires.* It was not an attempt to act within its powers, merely carried out in an unlawful manner. The power to act was lacking in the first place.

The distinction is pointed out in *Webb* v. *Township of Wakefield* (syllabi), 239 Mich. 521, where the court held:

"In an action on a contract which is not *ultra vires,* a municipal corporation may not shield itself behind a defense based on the manner in which the contract was made, and retain the benefits of the contract, without tendering at least a reasonable compensation for the benefits received.

"It is within the corporate powers of a township to develop, construct, maintain, and repair its highways, to raise taxes therefor, and expend the money in material, equipment, and work appropriate to that end.

"It does not necessarily follow that contracts of a municipal corporation for road purposes were

necessarily *ultra vires* as to the corporation itself because its agents or officers did not observe prescribed statutory procedure and limitations imposed upon them, especially where the benefits thereof were received, retained, and enjoyed by the corporation as such, and not by its officers.

"Although contracts with a township for work and materials furnished for road purposes are invalid, the party furnishing same is entitled to recover the reasonable value thereof, where the benefits are retained and enjoyed by the township."

The instant case comes within the principle announced by our recent decision in *Morley Brothers v. Township of Carrollton,* 305 Mich. 285, where the township attempted to escape payment for materials furnished the township in the construction of a water system, on the ground that the contract for purchase of the material was *ultra vires* in so far as it obligated the township or the taxpayers to pay for the same. Mr. Justice NORTH, for the court, said:

"Apparently the township was quite willing to acquire the water system which the adopted ordinance declared was 'necessary for the public health and safety of the township', and to accept materials from the seller; but now that the township's plans for financing the project have proven to be inadequate to pay for the full construction cost, it seeks to appropriate the materials it has received and to permit the seller to stand the loss; or possibly relegate the seller to securing payment from revenues of the water system after the prior lien of the bondholders is satisfied. * * * Defendant ordered, accepted and used the materials for which plaintiff has brought suit; and defendant is legally bound to pay."

The instant case is clearly distinguishable from *Knights of the Iron Horse* v. *City of Detroit,* 300 Mich. 467. In that case plaintiffs, owners of trucks

employed by the city of Detroit for hauling garbage, filed a bill of complaint in chancery seeking to enjoin the city from enforcing a resolution reducing the rental of trucks from $17.50 to $14 per day, and to compel the city to pay the larger rental. The city defended on the ground that the contract or arrangement demanded of the city would be invalid, on account of provisions of the city charter requiring advertisement for bids involving expenditure of more than $500. On that ground the circuit court denied plaintiffs the right to a mandatory injunction to enforce the asserted contract or arrangement, which decision was affirmed on appeal. Essentially this case differs from the one at bar wherein plaintiffs are seeking pay for materials which had already been furnished to and used by the school district, whereas in the Detroit case the plaintiffs were asking a court of equity to compel the city to recognize as valid an *ultra vires* contract or arrangement for future payment of services not yet performed, which would be contrary to the city charter.

The distinction between contracts *ultra vires per se,* and failure to comply with statutory provisions in the exercise of the power, is again pointed out in *Commercial State Bank of Shepherd* v. *School District No. 3 of Coe Township, Isabella County* (syllabus), 225 Mich. 656, where the court held:

"Where the power exists in a municipal corporation to bind itself, where the contract is *intra vires,* it will be bound even though it may have proceeded irregularly and in disregard of directory provisions as to the exercise of its power."

Counsel for appellant direct our attention to *Hanslovsky* v. *Township of Leland,* 281 Mich. 652. The difference between that case and the one at bar is apparent. In that case plaintiff sued the township

on promissory notes executed by the clerk and treasurer of the township. The clerk and treasurer lacked any power in the first instance to bind the township, nor did the township have any such power, except it affirmatively appeared that the electors at the annual town meeting had neglected to vote to raise money for township expenses. Again, this was not a case of exercising powers in a manner contrary to law, but an attempt to exercise a power that did not exist.

As pointed out, the electors of Trufant district had authorized the construction of the school building and the expenditure of the money and therefore the school board had authority to contract for the construction of the school building. In so doing, the acts of the school board were not *ultra vires,* even though the method of carrying into effect these powers should not be in compliance with the statute. As a matter of principle, the Trufant district should not be allowed to escape liability to plaintiffs on the technical defense now urged. The statement by this court in *United Savings Bank of Detroit* v. *School District No. 5,* 280 Mich. 419, quoting from *American LaFrance & Foamite Industries, Inc.,* v. *Village of Clifford, supra,* directly applies to the situation now before us:

" 'The good faith of government should never be less sacred than that of individuals.' Where the executed contract is neither *malum in se* nor *malum prohibitum,* but can only be avoided because of defects in the manner of its execution, the corporation cannot retain the benefits and deny the authority."

To sustain defendant's claim that the acts of the school board were *ultra vires,* it became incumbent on the defendant to show that at the time the materials were furnished or services rendered by plain-

tiffs, the Trufant board had obligated itself for or expended a greater sum of money than authorized by the electors of the district. The record sustains the finding of the circuit judge that the defendant failed to prove that there was not a sufficient balance in the building fund of the Trufant district out of the sums voted by the electors of the district, at the time the obligations were incurred, to pay plaintiffs in full. These obligations accrued at least not later than the time when the services were rendered and completed and the materials furnished by plaintiffs. The law does not require that plaintiffs should furnish material or services at their own risk during the construction of the building and await a determination when the building had been completed as to whether the total cost of the building exceeded the amount voted for it. As said by the circuit judge:

"If defendant's argument is sound, a school district could always avoid its just obligations, previously incurred, by simply incurring obligations in excess of the amount authorized and by so doing nullify all obligations incurred *before* the building funds had been exhausted or even partially depleted."

Thus answering the first contention of the defendant, we conclude that the acts of the school board were not *ultra vires* and the defendant herein cannot escape liability for the work done and materials furnished by plaintiffs on that ground.

Defendant further contends that the contracts, express or implied, relied on by plaintiffs for recovery are void, on the ground that the board of education of the Trufant district did not advertise for and obtain competitive bids for furnishing the material and performing the services.

There is no express declaration in that part of the school code applying to graded school districts (Act No. 319, pt. 1, chap. 3, Pub. Acts 1927 [2 Comp. Laws 1929, § 7115 *et seq.* (Stat. Ann. § 15.21 *et seq., supra*)]) which requires letting of contracts by competitive bidding for the erection of a school building. However, section 10 of said chapter 3 (2 Comp. Laws 1929, § 7124 [Stat. Ann. § 15.30]) provides:

"All school districts organized and operating under the provisions of this chapter shall be governed by the provisions of law contained in part two of this act except as is inconsistent with this chapter."

Turning to the provisions of part 2, chap. 2, § 27, of the school code, as added by Act No. 244, Pub. Acts 1929 (2 Comp. Laws 1929, § 7386), and amended by Act No. 224, Pub. Acts 1937 (Stat. Ann. 1938 Cum. Supp. § 15.400),* and sections 29 and 30, as added by Act No. 331, Pub. Acts 1931 (Comp. Laws Supp. 1940, §§ 7388–1, 7388–2, Stat. Ann. §§ 15.403, 15.404), as in effect at the time the present situation arose, were as follows:

"Sec. 27.   The qualified electors of any graded school district may vote by a majority of the qualified electors present and voting at an annual or special meeting called for that purpose, a tax for the purchasing of school sites, the erection of school buildings, additions to school buildings, and the remodeling of school buildings."

"Sec. 29.   The school board of any school district except a school district of the first class, which desires to commence the construction of any new school building, or addition to any existing school building, shall obtain competitive bids before such construc-

---

* This section was subsequently amended by Act No. 47, Pub. Acts 1939.

tion be commenced, on all the material and labor required for the complete construction of the proposed new building or addition to any existing school building.

"SEC. 30.   Such board shall advertise for the bids required in section twenty-nine hereof once each week for two successive weeks in a newspaper of general circulation in the county where the building is to be constructed."

Plaintiffs' testimony established that the services had been performed, and that the materials were sold by plaintiffs and furnished by them and used in the construction of the school building. It is conceded they were not paid for. No issue is raised but that the services and material were received and used in constructing the school building and that they were satisfactory. It is admitted that the charges and prices were reasonable and proper. Plaintiffs cannot be placed *in statu quo* by return of the materials. Are they entitled to recover the value of the services and materials? Defendant relies on the technical defense that the school board failed to advertise for and require competitive bids "before such construction be commenced, on all the material and labor required for the complete construction of the proposed new building"—using the words of the statute. This failure was set up by defendant as an affirmative defense.

The circumstances under which the new school building was constructed were somewhat unusual in that it was what is usually termed a "WPA" (Works Progress Administration) job. Plaintiff Hatch was first contacted in regard to installing heating and plumbing by the WPA job superintendent, and performed the work under a WPA supervisor. The school board at a formal meeting named three of its members as a building committee, and named one of

its members as head of the building committee "with authority to speak for the board." There were two "WPA projects" for the construction, caused by the fact that the funds for the first one were not sufficient to complete the building. As a rule, the WPA supervisor ordered the material, some of which was charged to, and paid for, by the school board. The WPA bought and paid for the brick, steel, glass, and a number of other items.

At the trial before the circuit judge without a jury, plaintiffs made *prima facie* cases under their declarations on the common counts by proving the furnishing of the services and material at the request of the Trufant school board, the fair value thereof, that the school district had used the same, that they were not paid for. The burden then was on the defendant to establish any affirmative defense.

The record fully establishes that the construction of the school building was a combined project of the Trufant school district and the Federal Works Progress Administration (WPA). We take judicial notice of the executive order creating the Federal Works Progress Administration, under the acts of congress (*Peacock* v. *Railway Co.*, 208 Mich. 403 [8 A. L. R. 964]), and also of its methods of operation to the extent that the same are commonly-known and accepted facts. *McGuire* v. *Saginaw Circuit Judge*, 101 Mich. 275; *Konieczny* v. *Railway Co.*, 164 Mich. 66; *Jeffries* v. *Wayne County Election Commission*, 294 Mich. 255; *Elliott* v. *Secretary of State*, 295 Mich. 245. Defendant has failed to show what was the arrangement, if any, between the Trufant district and the WPA as to letting of contracts. The contract with Hatch was authorized by the school board in accordance with the plans and specifications of the WPA, and performed under the

direction of the WPA. What effect does this situation have upon the necessity for compliance with the statute requiring competitive bidding *before construction be commenced,* on *all* the material and labor required for the *complete* construction of the building? Literally and strictly construed, as contended for by defendant, this would mean but one thing—that after construction was commenced, *no* material or labor used in the construction could be paid for by the board unless it had been encompassed within competitive bids received by the school board before construction was commenced.

We do not so construe the legislative intent. To do so in the instant case would exclude any possibility of any joint or concerted undertaking between the school board and the WPA for the construction of a school building. The making of a contract or contracts by the school board for *all* the material and labor required for the construction would in itself exclude the WPA from furnishing any labor or material unless the entire construction were let as a job to the WPA to the exclusion of any other labor or material.

In *Peterson v. City of Ionia,* 152 Mich. 678, the plaintiff brought suit against the city for the balance claimed to be due him for work and labor in filling and grading a street. The defendant claimed that the contract for that particular part of the work was *ultra vires*—the city having failed to advertise for bids therefor. Holding that the plaintiff was entitled to recover, the court said:

"It is argued that, as the city has had the benefit of the improvement, the defense of *ultra vires* is inequitable and unjust, and cannot be successfully urged in this case, counsel citing *Coit v. City of Grand Rapids,* 115 Mich. 493; *Carey v. City of Saginaw,* 79 Mich. 73; *East Jordan Lumber Co. v. Vil-*

*lage of East Jordan,* 100 Mich. 201; *Spier* v. *City of Kalamazoo,* 138 Mich. 652; *Arbuckle-Ryan Co.* v. *City of Grand Ledge,* 122 Mich. 491, and many other cases.

"On the other hand, it is claimed that *Chittenden* v. *City of Lansing,* 120 Mich. 539, rules this case instead of *Coit* v. *City of Grand Rapids,* 115 Mich. 493. We are of the opinion that *Chittenden* v. *City of Lansing* is inapplicable. \* \* \* In the case at bar the work was done in pursuance of a contract entered into by the council, who was duly authorized to contract. The law requiring such contract to be made by bids was disregarded. The city obtained the benefit. The case is indistinguishable from *Coit* v. *City of Grand Rapids, supra,* and the authorities there cited."

The rule of law announced in *Coit* v. *City of Grand Rapids* (syllabi), 115 Mich. 493, and which we believe to be applicable to the case at bar, is as follows:

"The fact that a part of the consideration for a grant of land to a city is an agreement by the city to do something which is *ultra vires,* but neither *malum prohibitum* nor *malum in se,* will not relieve the city from liability as to the remainder of the consideration.

"A municipality cannot retain the benefits of a contract which has been fully performed by the other party, and which is neither *malum prohibitum* nor *malum in se,* and at the same time deny the validity of the contract because of defects in the manner of its execution."

There is no claim of fraud, collusion, overreaching or excessive costs in the case before us. We consider the fundamental objective sought by the statute is to secure school buildings at the lowest possible expense. The construction contended for by

defendant would rule out all WPA participation in erecting school buildings. Such a construction would defeat the very purpose of the statute, to obtain school buildings at the lowest possible cost to the school district.

Under the circumstances of the present case we hold that the failure of the Trufant school board to advertise for and receive competitive bids before construction was commenced, on all the material and labor required for the contemplated school building, does not defeat plaintiffs' right to recover for the services and material furnished by them in the construction.

In view of our conclusions, it is not necessary to consider the question that either the Trufant district, or the defendant herein, ratified the implied contracts with plaintiffs. The judgments are affirmed, with costs to plaintiffs.

STARR, C. J., and NORTH, BUTZEL, BUSHNELL, SHARPE, and REID, JJ., concurred with BOYLES, J.

WIEST, J. (dissenting). The provisions of the statutory school code, applicable to the cases at bar, are mandatory, Knights of the Iron Horse v. City of Detroit, 300 Mich. 467, and the activities of the Federal Works Progress Administration in the premises were subject thereto in every particular. The plaintiffs cannot recover under the contracts made in violation of the provisions of the school code and the judgments in the circuit court should be reversed.