RENTSCHLER v. DETROIT BOARD OF EDUCATION.

1. TAXATION—INCREASE OF LIMITATION—ELECTORS.

The question of increasing the tax limitation upon property is to be determined by those possessing the qualifications of general electors under the Constitution (Const. 1908, art. 3, § 1, as amended in 1932; art. 10, § 21, as amended in 1948).

2. ELECTIONS—QUALIFICATIONS OF ELECTORS—CONSTITUTIONAL LAW —STATUTES.

Qualifications of electors which have been specifically provided by the Constitution may neither be increased nor decreased by legislation (Const. 1908, art. 3, § 1, as amended in 1932; art. 10, § 21, as amended in 1948).

3. SCHOOLS AND SCHOOL DISTRICTS—FIRST-CLASS DISTRICT—BONDS— APPROVAL BY ELECTORS.

The board of education of a school district of the first class is not required by statute to submit to the qualified school electors of the district any resolution authorizing the issuance of bonds by the board or the expenditure of money for school sites or buildings or repair of latter and for providing additional teachers and school supplies (2 Comp. Laws 1948, § 348.16, as amended by Act No. 2, Pub. Acts 1949).

4. TAXATION—INCREASE OF LIMITATION—STATUTES—EARMARKING OF FUNDS.

The purpose of the statute setting forth procedure for increase of property tax limitations and permitting ballot to contain a statement of the purpose for which the funds derived from the voted increase over the constitutional tax rate limitation may be used is designed to earmark the funds raised by the increase (1 Comp. Laws 1948, § 211.203).

5. SAME—STATUTES—EARMARKING OF FUNDS.

The statutory permission to earmark funds raised by increase of property tax limitation constitutes an imposition of a limitation upon the expending agency rather than a grant of authority thereto (1 Comp. Laws 1948, § 211.203).

REFERENCES FOR POINTS IN HEADNOTES
[2] 18 Am. Jur., Elections, § 51.
[6] 43 Am. Jur., Public Securities and Obligations, § 91.

6. ELECTIONS—SEPARATE SUBMISSION OF PROPOSALS—INCREASE OF TAX LIMITATION—DIRECT EXPENDITURE OF PUBLIC FUNDS—BONDS.

A resolution authorizing the direct expenditure of public moneys or the issuance of bonds may not be joined to and submitted as part of a proposal to increase the constitutional tax limitation, but should be submitted separately (Const. 1908, art. 10, § 21, as amended in 1948; 1 Comp. Laws 1948, § 211.203).

7. SAME—QUALIFICATIONS OF ELECTORS—TAX LIMITATION—CONSTITUTION—STATUTES.

A statute may not be construed as indicating any intent to change the qualifications of electors qualified to vote on the matter of increasing the tax limitation as prescribed in the Constitution itself (Const. 1908, art. 10, § 21, as amended in 1948; 1 Comp. Laws 1948, § 211.203).

8. SCHOOLS AND SCHOOL DISTRICTS—AUTHORITY TO INCREASE TAXES ABOVE CONSTITUTIONAL LIMITATION.

Once the board of education of a school district has been authorized to increase the assessment for taxes above the constitutional limitation, it must then determine what, if any, authorized increases shall be made in the amounts to be assessed for school purposes on property within the district (1 Comp. Laws 1948, § 211.203).

9. ELECTIONS—INCREASE OF TAX LIMITATION—QUALIFICATIONS OF ELECTORS.

The qualifications of electors entitled to vote on proposition to increase the constitutional limit on the rate of taxation is that of general electors entitled to vote and is not limited to such electors as own property within the district subject to the increased rate (Const. 1908, art. 3, § 1, as amended in 1932; art. 3, § 4; art. 10, § 21, as amended in 1948).

10. TAXATION—INCREASE OF LIMITATION—INJUNCTION.

Where general electors of school district were permitted to vote on matter of increasing the constitutional limitation on rate of taxation, property-owning taxpayers were not entitled to have board of education and others enjoined from the assessment and collection of taxes in accordance with the limitation fixed by the proposal as submitted (Const. 1908, art. 3, § 1, as amended in 1932; art. 3, § 4; art. 10, § 21, as amended in 1948).

11. COSTS—PUBLIC QUESTION—APPROVAL OF TAX LIMITATION IN-
    CREASE—ELECTORS.

    No costs are allowed in property taxpayers' suit to enjoin
    assessment and collection of taxes pursuant to approval of
    increase of tax limitation by a majority of the general elec-
    tors of school district voting on the proposition, a public
    question being involved (Const. 1908, art. 3, § 1, as amended
    in 1932; art. 10, § 21, as amended in 1948; Comp. Laws 1948,
    §§ 211.203, 348.16).

Appeal from Wayne; O'Hara (Chester P.), J.
Submitted May 13, 1949. (Docket No. 88, Calendar
No. 44,473.) Decided May 18, 1949. Rehearing de-
nied June 7, 1949.

Bill by C. Katherine Rentschler and others against
Board of Education of the City of Detroit and oth-
ers to restrain any action under proposition to in-
crease tax limit voted by electors. Decree for plain-
tiffs. Defendants appeal. The Attorney General
intervened. Reversed.

*Craig Thompson,* for plaintiffs.

*Clarence E. Page* (*Claude Stevens* and *James R.
Walsh,* of counsel), for defendants.

*Stephen J. Roth,* Attorney General, *Edmund E.
Shepherd,* Solicitor General, and *G. Douglas Clap-
perton,* Assistant Attorney General, for intervenor.

*Amici Curiae: Miller, Canfield, Paddock & Stone,
Thrun & Sidwell, Edward N. Barnard, Gilbert W.
Hand, John J. Fish, Roscoe O. Bonisteel.*

CARR, J. At the election held on April 4, 1949,
the defendant board of education caused to be sub-
mitted to the qualified electors of the school district
of the city of Detroit a proposition to increase the
limitation of the amount of taxes assessable each
year for school purposes against property in said

district. As submitted, such proposition read as follows:

"School Tax Limitation Proposition

"Shall the limitation of the amount of taxes which may be assessed each year against property in the school district of the city of Detroit be increased for a period of five (5) years from 1949 to 1953, both inclusive, by one-quarter of one per cent (1/4 of 1%), ($2.50 per thousand), of assessed valuation for the property in the district for the purpose of the acquisition of sites and the construction, or repair of elementary and secondary schools and Wayne University; and for providing additional teachers and school supplies?"

All electors in the district desiring to vote on the said proposition, and possessing the qualifications prescribed for general electors under article 3, § 1, of the State Constitution (1908), were permitted to do so. The election resulted in 125,900 affirmative votes being received as against 90,668 negative votes. The city election commission certified that the proposal as submitted had been approved.

Plaintiffs in the instant case are residents of the school district and the owners of property assessed therein for taxation for school purposes. They instituted suit in the circuit court against the board of education, the board of assessors of the city of Detroit, and the city treasurer, to enjoin the assessment and collection of taxes in accordance with the limitation fixed by the proposal as submitted, claiming that under article 3, § 4, of the State Constitution (1908) no electors other than those having property assessed for taxes in the district, or the lawful husbands or wives of such electors, should have been permitted to vote on the limitation proposal. Said constitutional provision reads as follows:

"Whenever any question is submitted to a vote of the electors which involves the direct expenditure

of public money or the issue of bonds, only such persons having the qualifications of electors who have property assessed for taxes in any part of the district or territory to be affected by the result of such election or the lawful husbands or wives of such persons shall be entitled to vote thereon."

On the filing of the bill of complaint an order issued requiring the defendants to show cause why the relief sought should not be granted. Thereafter defendants moved to dismiss the bill of complaint; and also filed answer thereto, alleging in substance that the proposal to increase the tax limitation in the school district had been properly adopted, and denying that plaintiffs were entitled to the relief sought. The answer further denied the claim of the plaintiffs as set forth in their bill of complaint that the proposition as submitted involves the "immediate and direct expenditure of public moneys." The answer admitted that "any moneys expended by virtue of the increase of the tax limitation will be limited," in accordance with the language of the proposal as set forth on the ballot.

Following a hearing on the merits, the circuit court granted a permanent injunction as prayed for in the bill of complaint. In a written opinion filed in the cause the trial judge indicated his conclusion that the statement in the limitation proposal with reference to the purposes sought to be accomplished in effect allocated to such purposes the additional funds that might be raised within the district for school purposes as a result of an increase in the tax limitation, that the board of education, under the increased limitation, was empowered to raise money for such purposes by taxation or by a bond issue or issues, and that in consequence article 3, § 4, of the State Constitution (1908) applied. From the decree entered defendants have appealed.

The action to obtain an increase in the limitation of the amount of taxes assessable in the school district for school purposes was taken in accordance with article 10, § 21, of the State Constitution (1908) which, as amended at the November, 1948, general election, reads as follows:

"The total amount of taxes assessed against property for all purposes in any one year shall not exceed one and one-half per cent. of the assessed valuation of said property, except taxes levied for the payment of interest and principal on obligations heretofore incurred, which sums shall be separately assessed in all cases: Provided, That this limitation may be increased for a period of not to exceed twenty years at any one time, to not more than a total of five per cent. of the assessed valuation, by a majority vote of the electors of any assessing district, or when provided for by the charter of a municipal corporation: Provided further, That this limitation shall not apply to taxes levied in the year 1932."

In *Dearborn Township School District No. 7 v. Cahow*, 289 Mich. 643, it was held that the question of increasing the tax limitation is to be determined by those possessing the qualifications of general electors under article 3, § 1, of the State Constitution (1908), as amended in 1932. In discussing the matter it was said:

"For the purposes of this case an elector under the Constitution may be said to be a citizen above the age of 21 years who has resided in the State six months and in the city or township in which such person proposes to vote at least 20 days next preceding such election. This, limited to the assessment district, is the test to be applied in voting upon a proposal to increase the 15-mill limitation, which is only a matter of fixing a rule of maximum taxation."

The court further pointed out that inasmuch as the Constitution specifically provides the qualifications of electors voting on the proposition under consideration such qualifications can neither be increased nor decreased by legislation. See, also, *Huron-Clinton Metropolitan Authority* v. *Boards of Supervisors of Five Counties,* 300 Mich. 1.

The school district of the city of Detroit, under the general school code of the State,* is a district of the first class, and as such is subject to the provisions of part 1, chapter 8, of the code (2 Comp. Laws 1948, § 348.1 *et seq.* [Stat. Ann. § 15.254 *et seq.*]). The preparation of the annual budget and the authority of the board of education with reference thereto are indicated in section 16 of said chapter as amended by Act No. 2, Pub. Acts 1949, which was approved by the governor on February 15, 1949, and given immediate effect. Said section reads as follows:

"SEC. 16. The board shall annually prepare estimates of its needs for the ensuing fiscal year on or before the last Tuesday in April. The estimates shall specify the amount required for salaries of teachers, and other employees of the board, repairs, fuel, supplies, and general current expenses, all of which items shall be classified as the 'maintenance fund;' and specify the amount required for the purchase of lands, the erection and remodeling of buildings, together with the necessary fixtures and furniture therefor and for other improvements to buildings and grounds, all of which items shall be classified as the 'building fund.' The estimates shall specify the amount to be appropriated for the retirement of the employees of the board of education, which items shall be classified as the 'employees' retirement fund.' The board may cause the whole or any part of the appropriation for the purchase of land and the erection of buildings to be made by the

* Act No. 319, Pub. Acts 1927, as amended (2 Comp. Laws 1948, § 341.1 *et seq.* [Stat. Ann. § 15.1 *et seq.*]).

issue of bonds in lieu of raising the same by taxation. Provision shall be made for the retirement of said bonds in a debt retirement fund, and said bonds shall bear interest at a rate not exceeding 6 per cent. per annum. The board shall thereafter, adopt a budget in the same manner and form as required for its estimates and determine the amount of tax levy necessary for such budget and shall certify on or before the Friday following the third Monday in May said amount to the assessing officers of the city who shall apportion the school taxes together with other taxes of the city; the amount so apportioned shall be assessed, levied, collected, and returned for the school district in the same manner as taxes of the city; and the city treasurer shall return to the school district its portion of the total tax collections on a percentage basis: Provided, however, That the tax levied by the board of education may in the discretion of the legislative body of the city be stated separately on each tax bill. Money or credits shall not be transferred from the building fund to the maintenance fund."

Section 29 of the chapter, which was likewise amended by said Act No. 2, further suggests the measure of responsibility and authority vested in the board. It is as follows:

"Sec. 29. Every action of the board, whereby any liability or debt may be created or every action originating the disposal or expenditure of property or money, shall be by yea and nay vote entered at large upon its record."

Under the provisions of the statute the defendant board of education was not required to submit to the qualified school electors of the district any resolution authorizing the issuance of bonds by the board or the expenditure of money for the purposes referred to in the statute and in the proposal that was submitted. *Hatch* v. *Maple Valley Township Unit*

*School,* 310 Mich. 516, is distinguishable on the facts, and is not in point in the instant controversy.

Act No. 62, Pub. Acts 1933 (commonly known as the property tax limitation act), as amended by Act No. 293, Pub. Acts 1947, provides in section 3 thereof (1 Comp. Laws 1948, § 211.203 [Stat. Ann. 1947 Cum. Supp. § 7.63]) that:

"Said ballot may also state the purpose for which the funds derived from the voted increase over the constitutional tax rate limitation may be used, and such funds shall not be considered by the county allocation board in dividing the net limitation tax rate among the various governmental units entitled thereto under the provisions of this act."

In incorporating in the limitation proposal a statement of the purposes for which money raised by taxation under the increased limitation would be used, it may be assumed that the defendant board of education acted in accordance with the permissive authority set forth in the provision quoted. The language of the statute, however, does not suggest that the legislature in enacting it had in mind that any such statement should affect the primary purpose of the proposal to increase the tax limitation. If such an explanation of the purpose sought to be accomplished were regarded as in the nature of a proposal to authorize the issuance of bonds or the direct expenditure of money, it is obvious that the proposition, if set forth in the form used in the instant case, would have a twofold aspect. It would involve (1) the increase of the tax limitation, and (2) the approval of action of the nature referred to in article 3, § 4, of the Constitution, above quoted. On the first proposition all regularly qualified electors as defined in the Constitution itself are entitled to vote, while the second proposition must be decided by qualified electors having property assessed for

taxes in the district, and the lawful husbands or wives of such electors.

We do not think that the legislature in the enactment of Act No. 293, Pub. Acts 1947, intended to bring about any such result. Rather the purpose sought to be accomplished was, as suggested by the amended title of the act, "to earmark funds raised by increasing the total tax limitation." It thus appears that the legislature intended, by authorizing the incorporation in the proposal of a statement of the character in question, to impose a limitation upon the expending agency rather than to grant authority thereto. The statute may not be interpreted as indicating that the legislature had in contemplation in its enactment that a resolution authorizing the direct expenditure of public moneys for specific purposes, or the issuance of bonds, may be joined to and submitted as part of a proposal to increase the constitutional tax limitation. Rather such proposition should be submitted separately, as was done by the plaintiff school district in the Cahow Case, supra.

The act of 1947, above referred to, must be construed in connection with article 10, § 21, of the Constitution. It was not within the power of the legislature to change the qualifications of electors qualified to vote on the matter of increasing the tax limitation as prescribed in the Constitution itself. The statute may not be construed as indicating any intent to do so. The reference to incorporating in the proposal a statement of purposes relates to the procedure that may properly be followed in submitting a proposal to increase the constitutional tax limitation. That was the issue submitted, and the statement as to the purpose for which the additional funds that might be raised were to be used was merely incidental. As before suggested, the statement of purposes has no effect other than "earmark-

ing" the additional funds that may be raised under the approved increased limitation.

It is evident that merely increasing the tax limitation does not in and of itself require the board of education to provide in its budget for the raising of money by taxation over and above the constitutional limitation. Under pertinent statutory provisions it rests with the defendant board to determine what, if any, authorized increases shall be made in the amounts to be assessed for school purposes on property within the district. Quite probably there will be such increases within the limit fixed by the new limitation, but such result does not follow directly from the approval of the proposition as submitted. Subsequent action by the board in the exercise of its discretion and pursuant to authority granted to it by statute is requisite. The approval of the proposal by the electors voting thereon was, as stated in the *Cahow Case, supra,* "only a matter of fixing a rule of maximum taxation." It did not involve the direct expenditure of public money or the issue of bonds.

We hold that the qualifications of electors entitled to vote on the proposal of the board of education were controlled by article 3, § 1, and article 10, § 21, rather than by article 3, § 4, of the Constitution. The conclusion follows that said proposition was properly submitted, and having been adopted by a majority of the qualified electors voting thereon it was duly carried. Plaintiffs are, therefore, not entitled to the injunctive relief sought by them. A decree will enter in this Court reversing the decree of the circuit court and dismissing the case. In view of the nature of the question involved, no costs are allowed.

SHARPE, C. J., and BUSHNELL, BOYLES, REID, NORTH, DETHMERS, and BUTZEL, JJ., concurred.