NATIONAL STEEL CORPORATION *v.* BATES TOWNSHIP.

VERONA MINING COMPANY *v.* CRYSTAL FALLS TOWNSHIP.

REPUBLIC STEEL CORPORATION *v.* SAME.

INLAND STEEL COMPANY *v.* SAME.

BANNER MINING COMPANY *v.* SAME.

1. TOWNSHIPS—SEWER AND WATER SYSTEMS—SPECIAL ASSESSMENT—REVENUE BONDS.

A township is authorized to acquire, operate, and enlarge sewer and water systems by financing the cost thereof by special assessment under the township and village improvement act or, in whole or in part, by revenue bonds under the revenue bond act (PA 1923, No 116, as amended; PA 1933, No 94, as amended).

2. SAME—SEWER AND WATER SYSTEMS—AD VALOREM TAXATION.

Township electors at an annual town meeting may vote to raise by ad valorem taxation an aggregate sum sufficient for the township's ordinary and contingent expenses, including in such sum an amount sufficient to acquire, or to operate, repair, and extend its sewer and water systems, within statutory limitations and county tax board allocations (Const 1908, art 10, § 21; Const 1963, art 9, § 6; CL 1948, § 41.3).

3. SAME—LIMITATION ON TAXING POWER—ELECTOR APPROVAL TO RAISE LIMIT.

The extremely restrictive dollar limitations imposed by statute upon a township's taxing powers exercised at annual township meetings and by the county tax allocation board may be augmented by a favorable vote of township electors at a special or general township election to raise the total tax rate above the 15-mill limitation (CL 1948, § 211.203).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 17A Am Jur, Drains and Sewers § 13.
    48 Am Jur, Special or Local Assessment § 35.
[2] 51 Am Jur, Taxation § 155.
[3, 5] 51 Am Jur, Taxation §§ 138–141.

4. SAME—INCREASE OVER 15-MILL LIMIT—RESTRICTION OF PURPOSE.
   Township elector authorization to tax above the 15-mill limi-
   tation that is not restricted to a specified township purpose
   is not subject to limitation upon use any more than are
   other unrestricted taxes in township's general fund (CL 1948,
   § 211.203; CLS 1961, § 211.211).

5. TAXATION—TOWNSHIPS—SEWER AND WATER SYSTEMS—MILLAGE
   INCREASE.
   The approval by an unchartered township's electors of a millage
   increase of 8 mills for meeting the expenses of operating and
   improving its sewer and water systems empowered the town-
   ship to levy and collect such additional millage for such purpose
   (Const 1908, art 10, § 21; Const 1963, art 9, § 6; CL 1948,
   §§ 41.3, 211.203; CLS 1961, § 211.211).

O'HARA, J., dissenting.

Appeals from Iron; Brown (Ernest W.), J. Sub-
mitted February 6, 1964. (Calendar Nos. 52–56,
Docket Nos. 49,679–49,681, 49,856, 49,857.) Decided
November 2, 1964.

Action by National Steel Corporation, a Delaware
corporation, against Bates Township and its town-
ship treasurer, to recover 1960 ad valorem taxes paid
under protest.

Similar actions by Verona Mining Company, a
Michigan corporation, Republic Steel Corporation,
a New Jersey corporation, Inland Steel Company, a
Delaware corporation, and Banner Mining Company,
a Michigan corporation, against Crystal Falls Town-
ship and its township treasurer.

Single opinion in National Steel case controlling
others. Judgments for defendants. Plaintiffs ap-
peal. Affirmed.

*Davidson, Clancey & Hansen,* for plaintiffs.

*Oswald C. Casanova,* for defendants.

O'HARA, J. (*dissenting*). This case concerns the right of townships to vote increases in the constitutional tax limitation[1] for the express purpose, so stated upon the ballot, to extend and maintain water and sewer lines and to levy ad valorem taxes for that purpose. The ballot used reads as follows:

"Shall the tax rate in the township of Crystal Falls, Iron county, Michigan, be increased an additional 10 mills for the years 1956 to 1960, both inclusive, the said increase to be used for the following purposes: 8 of said mills to be used for building, constructing, extending and maintaining water and sewer lines within said township, and 2 of said mills to be used for general township purposes?

"☐ YES

"☐ NO."

The proposal carried. Plaintiffs paid the 8-mill increase under protest and sued for its recovery.[2] It was agreed in the circuit court that the decision in the case of Republic Steel Company and Crystal Falls township, and its treasurer, would control in all 5 cases. The circuit judge held the levy and collection of the tax increase to have been proper. From his judgment for the defendant townships, the plaintiffs have appealed.

It is the position of plaintiffs that there is no express statutory authority for the use of general township funds for the installation of extension of water lines. They argue that there are 2 methods whereby townships may lawfully install or extend and maintain a water and sewer system. First, by the township and village improvement act,[3] or the

---

[1] See Const (1908), art 10, § 21; CL 1948 and CLS 1961, § 211.201 *et seq.* (Stat Ann 1960 Rev § 7.61 *et seq.*).—REPORTER.

[2] CL 1948, § 211.53 (Stat Ann 1960 Rev § 7.97).—REPORTER.

[3] CL 1948 and CLS 1961, § 41.411 *et seq.*, as amended (Stat Ann 1958 Rev and Stat Ann 1963 Cum Supp § 5.2411 *et seq.*).

revenue bond act.[4]   Plaintiffs also concede that non-earmarked or unpledged funds in the township general fund may be used for the payment, or partial payment, of such a project.   It is on the basis of this third method of payment that defendants rest their case.   If, they urge, the township may use unpledged or nonearmarked general funds for this purpose, and the accumulation of the funds from the increase in millage can be allocated to the general fund and thereafter used to pay for the water-sewer extension, it is mere sophistry to·hold that a specifically designated increase cannot be utilized for the declared purpose.

The question was submitted to the attorney general in a 2-part question in September of 1960 (2 OAG 1960, No 3492, p 115):

"1. May a township finance the construction of extensions to sewer and water lines in the township from general township funds?

"2. May a township levy and collect ad valorem taxes for the purposes of paying for extensions to its sewer and water lines which taxes have been raised by millage voted by the electors of the township for that purpose in excess of the 15-mill limitation?"

To question (1) the attorney general answered affirmatively.   To question (2) the answer was negative.

The able trial judge took a contrary position, expressed in the following language from his opinion:

"Plaintiff, following the reasoning of 2 OAG 1960, No 3492, p 115, contends that 'The only methods provided for the lawful raising of tax funds for such systems, however, are by the creation of special

---

[4] CL 1948 and CLS 1961, § 141.101 et seq., as amended (Stat Ann 1958 Rev and Stat Ann 1963 Cum Supp § 5.2731 et seq.).

assessment districts or the issuance of revenue bonds in connection with the respective statutes authorizing such expenditures under these conditions.' I find myself unable to agree with this reasoning. I can see no valid basis for this opinion of the attorney general which holds that while a township may allocate nonearmarked, unpledged revenues in general or so-called contingent funds to township improvement funds and expend same for extension of sewer and water lines, it cannot increase the tax limitation and expend ad valorem tax moneys for such purposes. Following such reasoning it would appear that it would have been lawful for the township to finance the projects out of the increased voted millage after it had accumulated in the general fund, but that it is unlawful to so use the funds once they were earmarked by the statement of purpose contained in the ballot which submitted the proposal to the electors."

We can understand why the trial judge found the issue confusing and the opinion cited apparently self-contradictory. We believe, however, the precise point upon which the attorney general's opinion was based was not fully emphasized nor briefed by either counsel and thus was not in reality passed upon by the court below.

The whole thrust of the attorney general's opinion is to be found in the following paragraph:

"I am of the opinion, therefore, that the township is without authority *to levy ad valorem taxes* raised by increased millage for the purpose of extending its sewer and water lines. There is no statutory authority therefor." (Emphasis supplied.)

We have added the emphasis to accentuate the point. While a millage increase may be voted, and the restricted purpose therefor stated on the ballot,[5] this

---

[5] *Rentschler* v. *Detroit Board of Education,* 324 Mich 603.

still gives the taxing authority (the township) no power to *levy* the increase.

Admittedly this leads to the stultifying, if not quixotic conclusion, that the electors may vote a millage increase for a restricted purpose but the taxing authority cannot collect it from the freeholders. We deal here, not with a desirable or undesirable result; we deal with the limited purposes for which a township can *levy* and *collect ad valorem taxes.* A township is not a sovereignty with inherent powers of government. It is a creature of statute and possesses only such powers as are expressly granted it by statute. See *Township of Royal Oak* v. *City of Pleasant Ridge,* 295 Mich 284, 289, and the cases there cited. No statute is cited, nor can we find any which expressly granted the power here sought to be exercised. This is the point the attorney general made in the following language:

"The authority for employment of special assessments, revenues and the funds mentioned, *supra, precludes any implication that it is the legislative intention that a township might resort to the ad valorem taxing power for such purpose."* OAG 3492, *supra.* (Emphasis supplied.)

The legislature has offered municipal corporations 2 methods whereby it may construct, maintain, or extend the facility here in question—the revenue bond act and the township improvement act hereinbefore mentioned. The grant of power in CL 1948, § 41.3 (Stat Ann 1961 Rev § 5.3) to tax in accordance with constitutional limitations is insufficient to support the levy of *ad valorem taxes* to extend sewer and water lines. "Corporate powers involving the imposing of public burdens must be strictly construed." *Bogart* v. *Township of Lamotte,* 79 Mich 294, 297.

Absent specific statutory authority to levy *ad valorem taxes* for the involved purpose, the township is limited to the methods legislatively prescribed. So deciding we need not discuss the postulate of the trial court concerning the power of the township to utilize general fund surplus for the ballot-stated purpose.

All plaintiffs appealed. We consider the appeal of Republic Steel Corporation. By stipulation of . counsel and by opinion of the trial court it is agreed rights of all plaintiffs in the separate actions shall be controlled by our opinion in Republic.

Under our settled law I am constrained to vacate the judgments entered in favor of defendants and against all parties plaintiff. The causes should be remanded for entry of judgments in appropriate amounts, including interest, in favor of all plain-tiffs.

No costs, questions of statutory construction being involved.

Souris, J. The only issue in this case is whether an unchartered township may levy, collect, and use ad valorem taxes for meeting the expenses of operating and improving its sewer and water systems.

The township and village public improvement act[1] and the revenue bond act[2] expressly authorize townships to acquire, operate, and enlarge sewer and water systems. The first authorizes financing the cost thereof by special assessment while the latter authorizes, but does not require (see CLS 1961,

---

[1] PA 1923, No 116, as amended (CL 1948 and CLS 1961, § 41.411 et seq., as amended [Stat Ann 1958 Rev and Stat Ann 1963 Cum Supp § 5.2411 et seq.]).

[2] PA 1933, No 94, as amended (CL 1948 and CLS 1961, § 141.101 et seq., as amended [Stat Ann 1958 Rev and Stat Ann 1963 Cum Supp § 5.2731 et seq.]).

§ 141.104 [Stat Ann 1958 Rev § 5.2734]), that the cost be defrayed by issuance of revenue bonds. We have held previously, in *Morley Brothers* v. *Township of Carrollton,* 305 Mich 285, that such a project undertaken pursuant to the revenue bond act could be financed in part by revenue bonds and the balance from other funds of the township including money raised by taxation and not otherwise restricted as to use. See, also, 1 OAG, 1957, No 3100, pp 429, 430, and 2 OAG, 1960, No 3492, question 1, pp 115–117.[3] Thus, the township electors at an annual town meeting may vote to raise by ad valorem taxation an aggregate sum sufficient for the township's ordinary expenses and its contingent expenses, including in such sum an amount sufficient to acquire, or to operate, repair, and extend its sewer and water systems, within the limitations specified in CL 1948, § 41.3 (Stat Ann 1961 Rev § 5.3).[4]    Then, if the county tax

---

[3] The attorney general also considered the specific issue involved in this appeal, but reached a conclusion contrary to that expressed in this opinion.

[4] "Sec. 3.    The inhabitants of any township shall have the power at any legal meeting, by a vote of the qualified electors thereof, to grant and vote sums of money, not exceeding such amounts as are or may be limited by law as they shall deem necessary for defraying all proper charges and expenses arising in such township, but they shall not vote or raise by tax in any 1 year for contingent or ordinary expenses of the township to exceed the sum of $4,000, except in townships having an assessed valuation of $1,500,000 or less and then not to exceed $3,000.00 and except in townships where there are 10 or more election precincts, and then a sum not to exceed $5,000, and except townships having an assessed valuation of $8,000,000 or over and then not to exceed 1/2 of 1% of the assessed valuation according to the assessment roll of the last preceding year: Provided, That in townships having an assessed valuation of $6,000,000 or over, but not more than $8,000,000, the qualified electors of such township at the next regular election to be held in such township, or at a special election called by the township board, shall vote on the proposition of the levy of not to exceed 1/2 of 1%, and if a majority of such electors voting thereon vote in favor thereof, then in any such township not to exceed 1/2 of 1% may be levied on the assessed valuation according to the assessment roll of the last preceding year. No money shall be raised by tax on the property of the township in excess of $5,000 in any 1 year for township purposes, except such as shall be voted for specific purposes, to be set forth and entered upon the records of the township, and all moneys so raised shall constitute

allocation board allocates to township purposes a
tax rate sufficient therefor—either the 1-mill mini-
mum tax rate for townships or that plus what the
board determines to allocate to the township in
addition from the balance available within the 15-
mill constitutional[5] tax rate limitation as provided in
CLS 1961, § 211.211 (Stat Ann 1960 Rev § 7.71)[6]—

a fund for the purpose or purposes so expressed, and shall not be
applied to any other purposes: Provided, however, That in townships
having an assessed valuation of $8,000,000 or over, the amount so
raised for ordinary or contingent expenses may be increased to 1/2
of 1% of the assessed valuation according to the assessment roll of
the last preceding year: Provided, That in townships having an
assessed valuation of $6,000,000 or over, but not more than $8,000,000,
in which the electors by a majority vote have voted in favor thereof,
not to exceed 1/2 of 1% may be levied on the assessed valuation ac-
cording to the assessment roll of the last preceding year. No board,
officer or officers shall create any debt or liability against the township,
or issue any warrant, certificate or order for the payment of money,
except when the creation of such debt or liability or the payment of
such money has been authorized by such vote or by the provisions
of law."

[5] Const 1908, art 10, § 21; Const 1963, art 9, § 6.

[6] "(a) The board shall examine the budgets and statements of
local units which have been filed with it, and shall determine the tax
rates exclusive of debt service tax rates which would be required
according to its proposed budget.

"(b) If the board shall find that the total of all such tax rates
which would be required to be levied on property located within the
area of any local unit does not exceed the net limitation tax rate,
it shall approve such tax rates as maximum tax rates, except such
tax rates as may be required to be determined under the following
subsections.

"(c) If the board shall find that the total of all such tax rates
which would be required to be levied on property located within the
area of any local unit exceeds the net limitation tax rate it shall
proceed according to the 3 following subsections.

"(d) The board shall approve minimum tax rates as follows: For
the county, 3 mills; for school districts, 4 mills; for community
college districts organized after April 15, 1957, 1/1000 of 1 mill; for
townships, 1 mill. If the community college district has voted to
increase the total tax limitation as provided in section 21 of article
10 of the State Constitution, the board during the period the increase
is in effect shall not allocate the 1/1000 of 1 mill minimum tax rate
to the community college district, but the community college district
shall raise all of its tax revenues from the amount of increase so
voted. No local unit shall be allowed a tax rate in excess of what
would be required according to its proposed budget. .

· ·"(e) The board shall divide the balance of the net limitation tax
rate between all local units after due consideration of the needs of
the several local units, the importance to the public of functions of

the township can levy, collect, and use such ad valorem taxes for such purposes.

The extremely restrictive dollar limitations imposed upon townships' taxing powers by CL 1948, § 41.3 and the powers given county tax allocation boards by CLS 1961, § 211.211 assure, by design or otherwise, that relatively insignificant sums may be raised by taxation upon the sole authority of the township electors who attend annual town meetings. Without the favorable vote of a township's electors at a special or general election to raise the total tax rate above its constitutional limit of 15 mills (CL 1948, § 211.203 [Stat Ann 1960 Rev § 7.63]),[7] no sum

---

local units which might have to be curtailed, the need of local units for construction or repair of public works, the proposed or accomplished transfer of functions from 1 local unit to others, and any other facts or matters concerning the operations of local units which the board may deem relevant: Provided, That no local unit shall be allowed a tax rate in excess of what would be required according to its proposed budget. The board shall approve a maximum tax rate for each local unit consisting of the minimum tax rate, if any, provided in subsection (e) [*sic*], added to the tax rate determined under this subsection.

"(f) The board shall approve a maximum tax rate for each local unit which has voted to increase the total tax rate limitation as provided in section 21 of article 10 of the Constitution of Michigan, and as provided for in this act, which tax rate, with other maximum tax rates which may be levied within the area of such local unit, shall not exceed the limitation voted. In approving a maximum tax rate for the various local units, the board shall not take into consideration any increase of the tax rate limitation voted by any local unit."

[7] "(c) If any local unit shall hold an election for the purpose of increasing the total tax rate limitation, as provided for by section 21 of article 10 of the State Constitution, the vote at such election shall be taken by ballot and said ballots shall be cast and counted in the manner provided by the general election laws of this State. Said ballots shall state the amount by which it is proposed that the total tax rate limitation on property in the local unit be increased and the number of years for which it is proposed that said increase shall be effective. Said ballot may also state the purpose for which the funds derived from the voted increase over the constitutional tax rate limitation may be used, and such funds shall not be considered by the county allocation board in dividing the net limitation tax rate among the various governmental units entitled thereto under the provisions of this act. Within 5 days after every election held in any local unit to increase the tax rate limitation, a certified copy of the official declaration of the result of the election shall be filed with the treasurer of the county or counties in which such local unit is located. The voted increase in the tax rate limitation shall be effective in such

in excess of 1 mill on a township's assessed valuation can be levied without the county tax allocation board's approval. That approval is given, if at all, only when the county tax allocation board allocates to a township part of the balance of the constitutionally limited 15-mill tax rate remaining after first allocating to all of the local units their statutorily specified minimum tax rates. Such tax rate allocation, over and above the minimum tax rate allocation, is required to be made upon "due consideration of the needs of the several local units, the importance to the public of functions of local units which might have to be curtailed, the need of local units for construction or repair of public works, the proposed or accomplished transfer of functions from 1 local unit to others, and any other facts or matters concerning the operations of local units which the board may deem relevant" as provided in CLS 1961, § 211.211. In the event of a favorable vote of a township's electors to increase the constitutional tax rate limitation, as permitted by the Constitution and by CL 1948, § 211.203, ad valorem taxes in excess of 15 mills can be levied at a town meeting without being subject to the county tax allocation board's approval. See subparagraph (f) of CLS 1961, § 211.211, quoted above in the margin. Such elector authorization to tax above the 15-mill limitation may, *but need not,* be restricted for a specified township purpose. See subparagraph (c) of CL 1948, § 211.203, also quoted above in the margin. If it is not, taxes levied and collected pursuant to such authorization are subject to no statutory limitation

local unit only when such certified copy is filed. The notice of every election in which an increase in the total tax rate limitation is to be voted upon shall contain a statement by the county treasurer of the county or counties in which the local unit so voting is located of the total of all voted increases in the total tax rate limitation, in any local units, affecting the taxable property in the local unit so voting, and the years such increases are effective." . . . . .

upon use any more than are other unrestricted taxes in a township's general fund. If the electors' authorization to exceed such constitutional tax limit is restricted (as it was in the case at bar), taxes levied and collected above 15 mills and within the increased tax rate limitation must, of course, be used only for the restricted purpose.

Since, in the case at bar, the voted authorization of the township's electors was to increase the 15-mill tax rate limitation by 8 mills "for building, constructing, extending and maintaining water and sewer lines within said township", the subsequent levy and collection of such additional millage for such authorized use was within the powers of the township.

Judgment affirmed. Costs to the appellees.

KAVANAGH, C. J., and DETHMERS, KELLY, BLACK, and SMITH, JJ., concurred with SOURIS, J.

ADAMS, J., did not sit.